780 So.2d 17 (2001)
Bryon GORDON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC96834.
Supreme Court of Florida.
February 22, 2001.
*18 James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, FL, for Respondent.
PER CURIAM.
We have for review a decision on the following question certified by the Fifth District Court of Appeal to be of great public importance:
DOES THE DOUBLE JEOPARDY CLAUSE PRECLUDE CONVICTING AND SENTENCING A DEFENDANT ON CHARGES OF ATTEMPTED FIRST DEGREE MURDER, CAUSING BODILY INJURY DURING A FELONY, AND AGGRAVATED BATTERY CAUSING GREAT BODILY HARM?
Gordon v. State, 744 So.2d 1112 (Fla. 5th DCA 1999). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the negative and approve the decision of the Fifth District.

PROCEDURAL AND FACTUAL BACKGROUND
Bryon Gordon (Gordon) seeks review of multiple convictions on double jeopardy grounds. Gordon was charged with attempted first-degree murder with a firearm (Count I), causing bodily injury during a felony with a weapon (felony causing bodily injury) (Count II), aggravated battery causing great bodily harm with a firearm (Count III), and robbery with a firearm (Count IV). Counts I and II are both life felonies. See §§ 782.04(1)(a), 777.04(4)(b), 775.087(1)(a), 782.051(1), Fla. Stat. (1997). Count III is a first-degree felony. See §§ 784.045(1)(a)1, 775.087(1)(b), Fla. Stat. (1997). Count IV is a first-degree felony punishable by life in prison. See § 812.13(2)(a), Fla. Stat. (1997).
At trial, the evidence established that Gordon confronted the alleged victim, Michael Friedman, with a gun, punched him in the face, and demanded his money. After Friedman resisted, Gordon shot him in the side while simultaneously grabbing his wallet.
At the close of the State's case, Gordon moved for a judgment of acquittal, arguing that Count III was subsumed within Count I. The trial court, concluding that the State had satisfied its burden, denied the motion. Gordon renewed his motion at the close of all the evidence, contending that "there was one gunshot, and we have three crimes basically charged for the same offense." The trial court responded, "Well, I think they can do that."
The jury returned verdicts of guilty as charged on the four counts. The trial court announced that Gordon would be adjudicated guilty as to those four charges, but requested argument regarding whether, for purposes of sentencing, Counts II and III were subsumed in Count I. At the sentencing proceeding, the trial court indicated that it was inclined to rule that Counts II and III were subsumed in Count I because there was a single gunshot that "caused all the damage." Although the *19 State recognized that Count II might be subsumed in Count I, it contended that Counts I and III were separate offenses. The trial court reiterated that it would adjudge Gordon guilty of all four charges, but concluded that it would not sentence him on Counts II or III. Accordingly, the trial court sentenced Gordon on Count I (attempted first-degree murder) to 276 months with a minimum mandatory term of three years, and on Count IV (robbery with a firearm) to 60 consecutive months (for a total of 336 months) with a consecutive mandatory term of three years.
Gordon appealed to the Fifth District Court of Appeal, arguing that his convictions for Counts II and III should be vacated because they were subsumed in Count I. Gordon further argued that the sentence imposed on Count I should be reduced because points were added on his guidelines scoresheet to reflect the convictions on Counts II and III, even though the judge did not impose separate sentencing orders on those counts. The State, in its brief filed in the Fifth District, accepted Gordon's statement of the facts, expressly noting that it "does not dispute that these convictions resulted from a single incident where one shot was fired."
The Fifth District affirmed the four convictions and remanded for imposition of sentence on Counts II and III. See Gordon v. State, 744 So.2d 1112 (Fla. 5th DCA 1999). In its recitation of the facts, the Fifth District stated:
The victim testified that the Defendant held a gun to his side, demanded his wallet, punched him in the face, then shot him while the wallet was being removed from his pocket. The injuries from the gunshot were life-threatening and left the victim scarred for life; there was no evidence of any injury from the punch to the face.
Id. at 1113. The court recognized that attempted first-degree murder requires an intent to kill, while felony causing bodily injury does not. See id. at 1114. Similarly, felony causing bodily injury requires bodily injury, while attempted first-degree murder does not. See id. The court rejected Gordon's argument that Counts I, II, and III were merely degrees of the same offense. Rather, the court concluded that they were aimed at punishing different evils: attempts to kill and the acts of physically injuring someone. See id. The court further noted that the Legislature effectively had overruled Carawan v. State, 515 So.2d 161 (Fla.1987), and that this Court later recognized that multiple punishment for separate offenses could be imposed based on a single act. See id. at 1115 & n. 9. Accordingly, the Fifth District held that Counts II and III were not subsumed in Count I and certified the aforementioned question as one of great public importance. See id. at 1115.

PRIOR DOUBLE JEOPARDY CASELAW
The Double Jeopardy Clause in both the state and federal constitutions protects criminal defendants from multiple convictions and punishments for the same offense.[1] The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." M.P. v. State, 682 So.2d 79, 81 (Fla.1996); see State v. Anderson, 695 So.2d 309, 311 (Fla.1997) ("Legislative intent is the polestar that guides our analysis in double jeopardy issues...."). Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the Blockburger[2] test, as *20 codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist. See Gaber v. State, 684 So.2d 189, 192 (Fla.1996) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the Blockburger `same-elements' test pursuant to section 775.021(4) ... is the sole method of determining whether multiple punishments are double-jeopardy violations.") (footnote omitted). Section 775.021 provides:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
§ 775.021, Fla. Stat. (1997). Thus, the Blockburger test, or "same-elements" test, inquires whether each offense has an element that the other does not. See State v. Craft, 685 So.2d 1292 (Fla.1996); Richardson v. Lewis, 639 So.2d 1098, 1099 (Fla. 2d DCA 1994). If so, then they are considered separate offenses, and the defendant may be convicted and punished for each offense. Several cases have involved a straightforward application of this statute, that is, examining the statutory elements of each offense to determine whether the offenses may be considered separate. See Gaber, 684 So.2d at 189-90; Johnson v. State, 689 So.2d 1065 (Fla.1997) (holding that armed trespass and grand theft convictions did not constitute double jeopardy); State v. Maxwell, 682 So.2d 83, 84 (Fla.1996); State v. Johnson, 676 So.2d 408, 409-10 (Fla.1996); Jones v. State, 608 So.2d 797 (Fla.1992); McAllister v. State, 718 So.2d 917 (Fla. 5th DCA 1998); Billups v. State, 690 So.2d 1381 (Fla. 1st DCA 1997); Hamrick v. State, 648 So.2d 274 (Fla. 4th DCA 1995) (discussing legislative intent to punish multiple offenses resulting from a single act).
The application of the statutory exceptions, however, is more complex. At issue in the present case is the construction of the second exceptionoffenses which are degrees of the same offense as provided by statute.[3] We addressed varying degrees of crimes in Johnson v. State, 597 So.2d 798 (Fla.1992). In that case, the defendant was convicted of both grand theft of property and grand theft of a firearm for snatching a purse containing both cash and a firearm. See id. at 799. We concluded that the value of the goods or the taking of a firearm merely defined the degree of the felony and did not constitute *21 separate crimes. See id. In State v. Thompson, 607 So.2d 422 (Fla.1992), we adopted the lower court's opinion, holding that dual convictions for fraudulent sale of a counterfeit controlled substance and felony petit theft were impermissible. Relying on Johnson and Thompson, we held in Sirmons v. State, 634 So.2d 153 (Fla.1994), that convictions for both grand theft of an automobile and robbery with a weapon constituted double jeopardy. In so holding, we reasoned that these offenses were "aggravated forms of the same underlying offense distinguished only by degree factors." Id. at 154. Consequently, the defendant's "dual convictions based on the same core offense [could not] stand." Id. In a concurring opinion, Justice Kogan interpreted the second statutory exception as prohibiting multiple convictions for certain core offenses which were distinguishable only by degree. See id. at 155-56 (Kogan, J., concurring). In a dissenting opinion, Justice Grimes noted that the crimes were entirely separate, and the effect of the majority decision was to reinvigorate the Carawan analysis. See id. at 156-57 (Grimes, J., dissenting). We reaffirmed Sirmons in Goodwin v. State, 634 So.2d 157 (Fla.1994), where we held that dual convictions for UBAL (unlawful blood alcohol level) manslaughter and vehicular homicide arising out of one death violated the Double Jeopardy Clause. We concluded that these two offenses were "aggravated forms of a single underlying offense distinguished only by degree factors." Id. at 157. In a similar vein, in State v. Anderson, 695 So.2d 309 (Fla.1997), we held that the double jeopardy clause prohibited multiple convictions for perjury in an official proceeding and providing false information in an application for bail when the charges arose out of a single act. We concluded that "[b]oth statutes punish the same basic crime (i.e., the violation of a legal obligation to tell the truth), and differ only in terms of the degree of violation." Id. at 311. Likewise, in Khan v. State, 704 So.2d 1129, 1131 (Fla. 4th DCA 1998), the Fourth District held that dual convictions for interfering with custody of a child and removing a minor from the state contrary to a court order were impermissible. The court reasoned that "[b]oth statutes punish the same basic crime and differ only in terms of the degree of the violation." Id. The court further noted, "Because both offenses seek to punish the same underlying act, appellant's dual convictions cannot stand." Id.
Thus, our construction of the second exception indicates that a two-step inquiry is required: whether the crimes constitute separate offenses under Blockburger, as codified in section 775.021(4)(a), and whether the crimes are "degree variants" or aggravated forms of the same core offense.

ANALYSIS
A traditional Blockburger analysis, which is required by section 775.021, indicates that the crimes at issue are separate offenses for double jeopardy purposes. According to the Standard Jury Instructions, the elements of attempted first-degree murder are: (1) an act intending to cause death that went beyond just thinking or talking about it; (2) premeditated design to kill; and (3) commission of an act which would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or the defendant failed to do so. See Fla. Std. Jury Instr. (Crim.) 85; see also §§ 777.04(1), 782.04(1)(a), Fla. Stat. (1997). Aggravated battery causing great bodily harm requires: (1) an intentional touching or striking of the victim against his will or intentionally causing bodily harm to the victim; and (2) in committing the battery, the defendant intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to the victim and used a deadly weapon. See Fla. Std. Jury Instr. (Crim.) 122; see also § 784.045(1)(a)1, Fla. Stat. (1997). Felony causing bodily injury requires: (1) commission or attempt to commit an enumerated felony (robbery); and (2) an act causing *22 bodily injury. See § 782.051(1), Fla. Stat. (1997).[4]
Each of these crimes contains an element that the other does not. First, attempted first-degree murder and felony causing bodily injury cannot be considered the same offense. Attempted first-degree murder entails an intent to kill, whereas felony causing bodily injury does not. Likewise, felony causing bodily injury requires bodily injury, whereas attempted first-degree murder does not. Therefore, the Blockburger analysis indicates that they are separate offenses. See Brown v. State, 761 So.2d 1135 (Fla. 1st DCA 2000) (holding that attempted first-degree murder and felony causing bodily injury were separate offenses under Blockburger and did not constitute degrees of the same offense), review granted, 767 So.2d 454 (Fla.2000). Second, attempted first-degree murder is distinguishable from aggravated battery because the latter requires an intent to cause great bodily harm, not an intent to kill, which is necessary for attempted first-degree murder. Likewise, aggravated battery requires great bodily harm, whereas attempted first-degree murder does not. The attempt to kill the victim is a separate and distinct act which is complete when the gun is firedregardless of whether the target is hit. Thus, the Blockburger analysis also indicates that attempted first-degree murder and aggravated battery are separately punishable. Third, felony causing bodily injury requires an attempt to commit a felony; however, aggravated battery does not.[5] Indeed, the statute governing this offense is not even applicable until a predicate felony offense is committed. Although similar, aggravated battery requires great bodily harm, whereas felony causing bodily injury merely requires an act causing bodily injury. This distinction is important because the great bodily harm element distinguishes aggravated battery from a simple battery. Therefore, felony causing bodily injury and aggravated battery causing great bodily harm are also separate offenses under Blockburger.
As previously mentioned, even if the offenses satisfy the Blockburger test, they may still be considered degree variants of the same core offense. Gordon argues that the offenses in the instant case are merely degree variants of an underlying offense of causing bodily harm or injury to another and, therefore, multiple convictions are impermissible. As such, Gordon contends that Sirmons and its progeny are applicable to the instant case. The State, however, contends that Sirmons is distinguishable because it predates the 1997 enactment of section 782.051(1), and it did not involve an attempted homicide.
To determine whether the second statutory exception applies, we must analyze Sirmons and its progeny. In Sirmons, we held, based on our earlier decisions in Johnson and Thompson, that grand theft *23 of an automobile and robbery with a weapon, which arose from a single taking of an automobile at gun point, were "merely degree variants of the core offense of theft." 634 So.2d at 154. However, the crimes involved in Johnson were grand theft of cash and grand theft of a firearm from the same purse, and the crimes involved in Thompson were fraudulent sale of a counterfeit controlled substance and felony petit theft arising from the same sale; neither case involved a robbery. As Justice Grimes noted in his Sirmons dissent, the Johnson and Thompson decisions were based on the Court's perspective that each of the offenses was a species of theft. See Sirmons, 634 So.2d at 156 (Grimes, J., dissenting). However, he also pointed out that theft and robbery have always been separate offenses. Justice Kogan, in his Sirmons concurrence, continued with the core offenses analysis, in essence, opining that theft, battery, possession of contraband and homicide are the type of core offenses upon which other criminal charges are based. Id. at 155 (Kogan, J., concurring). Later cases applying this exception, Goodwin, Anderson, and Khan, simply hold that different degrees of the same basic crimes were being punished. Extended to its logical extreme, a broad reading of Sirmons and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora of criminal offenses is undoubtedly derived from a limited number of "core" crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b). The courts' exceptions for homicides, which are discussed below, and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception. However, extension of this exception to multiple convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury would contravene the plain meaning of section 775.021.
As Justice Shaw noted in his dissenting opinion in Carawan v. State, 515 So.2d 161, 173 (Fla.1987) (Shaw, J., dissenting):
The primary evil of aggravated battery is that it inflicts physical injury on the victim; the primary evil of attempted homicide is that it may inflict death, there is no requirement that the state prove any physical injury. The two statutes are not addressed to the same evil. The relationship between aggravated battery and attempted homicide is different than that between aggravated battery and actual, not attempted, homicide.
Gordon contends that the offenses are synonymous because they all involve the core offense of injuring someone. On the contrary, attempted first-degree murder punishes the intent to kill, whereas aggravated battery causing great bodily harm punishes the act of seriously injuring another person. As the State correctly points out, felony causing bodily injury punishes the act of injuring someone during the commission of a felony, in this case armed robbery. This concern is unrelated to aggravated battery, which does not require the commission of a felony. In short, the separate evils of intending to kill, seriously injuring someone, and injuring someone during the commission of a felony are sufficiently distinct that they warrant separate punishment. As Justice Shaw noted in his Carawan dissent, "[W]here appellant unquestionably committed all three offenses, all three caused separate evils, and all three meet the criteria of section 775.021(4) for separate convictions and punishments, the legislative directive to punish cumulatively cannot be said to be unreasonable." Id.
The State attempts to distinguish Sirmons because it predated the enactment of the felony causing bodily injury offense. However, this distinction is not persuasive because of the continued viability of the "core offense" construction of the second *24 statutory exception. Nevertheless, the foregoing analysis demonstrates that, unlike Sirmons, the crimes at issue in the instant case are not aggravated forms of the same core offense.
As further support, Gordon contends that, contrary to the Fifth District's opinion, the holdings in Carawan and State v. Boivin, 487 So.2d 1037 (Fla.1986), control the outcome of this case. In Carawan, we held that dual convictions for aggravated battery and attempted manslaughter arising out of the same act constituted double jeopardy. See Carawan, 515 So.2d at 170-71. In so doing, we employed several rules of construction, including the rule of lenity. See id. Subsequently, the Legislature amended section 775.021, explicitly enunciating its intent that crimes be separately punished without regard to the rule of lenity. We have noted repeatedly that the Legislature effectively overruled Carawan. See State v. Smith, 547 So.2d 613, 615-17 (Fla.1989).
In Boivin, we noted that the statutory elements of attempted first-degree murder and aggravated battery revealed that each crime required proof of an additional element that the other did not. See Boivin, 487 So.2d at 1038. Nevertheless, we found "no legislative intent or recognition that society needs multiple punishments for both aggravated battery and attempted first-degree murder where both the attempted murder and the aggravated battery caused no additional injury to another person or property." Id.
In light of the subsequent statutory amendment explicitly setting forth the Legislature's intent, the Carawan and Boivin decisions cannot be said to control the instant case. Those decisions were explicitly based on our interpretation of legislative intent, an interpretation expressly rejected by the Legislature. While we noted in Boivin that the statutory elements of the two crimes were different, we further said that we could discern no legislative intent to separately punish defendants for both crimes. See id. However, we now know the legislative intent. The subsequent amendment to section 775.021 explicitly states, "The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity... to determine legislative intent." § 775.021(4)(b), Fla. Stat. (1997). Thus, the Carawan and Boivin holdings are not the most reliable guideposts for determining whether a double jeopardy violation exists.
The State argues that courts have imposed no prohibition against convicting a defendant of both aggravated battery and attempted murder. See, e.g., Boone v. State, 615 So.2d 760 (Fla. 4th DCA 1993); Tripp v. State, 610 So.2d 1311 (Fla. 1st DCA 1992), approved, 642 So.2d 728 (Fla. 1994). Gordon, on the other hand, contends Tripp involved separate acts and that the Boone opinion does not indicate whether the convictions resulted from a single act. Instead, he contends the decisions in Campbell-Eley v. State, 718 So.2d 327 (Fla. 4th DCA 1998), and Laines v. State, 662 So.2d 1248 (Fla. 3d DCA 1995), receded from on other grounds, Grene v. State, 702 So.2d 510 (Fla. 3d DCA 1996), which hold that dual convictions for aggravated battery and second-degree murder are impermissible, are more persuasive and more analogous to this situation.
Gordon correctly observes that the Boone opinion does not indicate whether the crimes resulted from a single act. However, his cursory dismissal of Tripp is not as persuasive because the crimes do appear to result from one criminal episode. In either event, the cases that Gordon offers as support for his position are, again, not dispositive. First, the cases did not involve the crimes of attempted first-degree murder and aggravated battery. Second, while the courts in Campbell-Eley and Laines recognized that the crimes at issueaggravated battery and second-degree murdereach contained an element that the other did not, the thrust of the *25 decisions was the fact that a series of blows had led to the death. See Campbell-Eley, 718 So.2d at 329. Third, those cases were decided based on the rationale that "the legislature did not intend to create a separate offense for every murderous blow that a defendant inflicted upon a deceased in a single incident." Id. That rationale is not applicable here, where an actual homicide did not occur as a result of Gordon's criminal actions.
In a similar argument, Gordon highlights the principle that convictions for both premeditated murder and felony murder are impermissible when only one death occurred. See Goss v. State, 398 So.2d 998, 999 (Fla. 5th DCA 1981). We have held repeatedly that section 775.021 did not abrogate our previous pronouncements concerning punishments for singular homicides. See Goodwin v. State, 634 So.2d at 157-58 (Grimes, J. concurring) ("I believe that the Legislature could not have intended that a defendant could be convicted of two crimes of homicide for killing a single person."); State v. Chapman, 625 So.2d 838, 839 (Fla.1993); Houser v. State, 474 So.2d 1193, 1196 (Fla.1985) (noting that "only one homicide conviction and sentence may be imposed for a single death"); Campbell-Eley, 718 So.2d at 329; Laines v. State, 662 So.2d at 1250; Goss v. State, 398 So.2d at 999. Indeed, this principle is based on notions of fundamental fairness which recognize the inequity that inheres in multiple punishments for a singular killing. As Justice Shaw noted in his Carawan dissent, "physical injury and physical injury causing death, merge into one and it is rationally defensible to conclude that the legislature did not intend to impose cumulative punishments." Carawan, 515 So.2d at 173 (Shaw, J., dissenting). No death occurred in this case.
Nonetheless, Gordon contends that the logical extension of this principle dictates that dual convictions for attempted premeditated murder and attempted felony murder are impermissible. The State concedes this point, but emphasizes that section 782.051(1) provides that a defendant may be convicted of both felony causing bodily injury and an enumerated offense. Since the enumerated offense was armed robbery, not attempted murder, the State contends that the felony causing bodily injury conviction was proper. The principle that dual convictions for attempted premeditated murder and attempted felony murder are impermissible is inapplicable to the present case because felony causing bodily injury does not punish the intent to kill, which is presumed under the felony murder doctrine, and is much broader than the former crime of attempted felony murder. Thus, the defendant is not impermissibly subjected to multiple punishments for the attempt to kill one person.
We find Gordon's other contentions to be without merit. Therefore, we hold that attempted first-degree murder, felony causing bodily injury, and aggravated battery causing great bodily harm constitute separate offenses under Blockburger and are not "degree variants" of the same underlying offense. Thus, no double jeopardy violation exists. Accordingly, we answer the certified question in the negative, approve the decision of the district court, and direct that this case be remanded to the trial court for resentencing, since Gordon was not sentenced on Counts II and III because of double jeopardy concerns.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., dissents with an opinion.
QUINCE, J., dissenting.
I agree with the majority that Count III, aggravated battery causing great bodily harm, is separately punishable from attempted first-degree murder and felony causing bodily injury. However, I disagree that multiple convictions for all three crimes are permissible. In my view, dual convictions for attempted first-degree *26 murder and felony causing bodily injury (Counts I and II) constitute double jeopardy.
As the State correctly observes, despite the statement of legislative intent incorporated in section 775.021, as amended in 1988, this Court has nonetheless held that multiple convictions for singular homicides are impermissible. See State v. Chapman, 625 So.2d 838, 839 (Fla.1993). This principle is equally applicable to attempted homicides. Therefore, the Court should determine whether the felony causing bodily injury statute is sufficiently synonymous with the putative common law crime of attempted felony murder such that dual convictions for felony causing bodily injury and attempted premeditated murder are impermissible.
In Amlotte v. State, 456 So.2d 448 (Fla. 1984), this Court held that attempted felony murder was a crime in Florida. The elements of this crime were the perpetration of or attempt to perpetrate an enumerated felony and an intentional overt act, or the aiding and abetting of such an act, which could, but does not, cause the death of another. The Court reasoned, "Because the attempt occurs during the commission of a felony, the law, as under the felony murder doctrine, presumes the existence of the specific intent required to prove attempt." Id. at 449.
In State v. Gray, 654 So.2d 552 (Fla. 1995), this Court overruled Amlotte and concluded that attempted felony murder was a nonexistent crime. In 1996, the Legislature enacted section 782.051, Florida Statutes. Section 782.051 states: "Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an act that causes bodily injury to another commits a felony of the first degree...." § 782.051(1), Fla. Stat. (1997). Admittedly, the language of this section is more expansive than our previous conception of the nonexistent crime of attempted felony murder because it requires bodily injury. However, in 1998 the Legislature substantially rewrote this section and retitled it "Attempted felony murder." Amended section 782.051(1) now provides: "Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony of the first degree...." § 782.051(1), Fla. Stat. (1999).
In Brown v. State, 761 So.2d 1135 (Fla. 1st DCA 2000), review granted, 767 So.2d 454 (Fla.2000),[6] the First District construed the former version of section 782.051the version at issue in this case. In so doing, the court recognized that the Legislature intended section 782.051 to be a replacement for and expansion of the previous crime of attempted felony murder. As the First District noted, the legislative history indicates that section 782.051 was enacted as a response to this Court's opinion in Gray. Indeed, the senate staff analysis explicitly states: "These new felony offenses would replace the crime of `attempted felony murder,' which was recently abolished by the Florida Supreme Court." Fla. S. Comm. on Crim. Just., CS for SB 2712 (1996) Staff Analysis 1 (Apr. 10, 1996). Thus, it seems abundantly clear that section 782.051 reinvigorates the former crime of attempted felony murder.
In the present case, a single gunshot was the basis for the attempted premeditated murder and felony causing bodily injury convictions. In effect, felony causing bodily injury is essentially the former crime of attempted felony murder. Although the Legislature evinced an intent to punish all crimes committed in the course of one criminal episode, we must *27 also be cognizant of the corollary principle that alternative theories for homicides cannot be used to convict defendants of multiple crimes. The same principle is applicable to alternative theories of attempted homicides.
For the foregoing reasons, Gordon's convictions for felony causing bodily injury and attempted premeditated murder constitute double jeopardy. That portion of the district court's opinion affirming the conviction on Count II and requiring sentencing on Count II should be quashed. The case should be remanded to the trial court for entry of judgment on counts I, III and IV and for sentencing on those counts only.
NOTES
[1] Article I, section 9, of the Florida Constitution provides: "No person shall ... be twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const. The Fifth Amendment of the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.
[2] See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[3] The crimes in the instant case do not satisfy the other statutory exceptions because they are neither identical offenses nor do they constitute lesser-included offenses. See State v. McCloud, 577 So.2d 939, 941 (Fla.1991) (holding that "an offense is a lesser-included offense for purposes of section 775.021(4) only if the greater offense necessarily includes the lesser offense"); see also Aiken v. State, 742 So.2d 811 (Fla. 2d DCA 1999) (recognizing that the third exception applies only to necessarily included offenses). Further, courts may not examine facts in the record, but must look only to the statutory elements of the offenses to determine whether a double-jeopardy violation exists. See Gaber v. State, 684 So.2d 189, 190 (Fla.1996); see also McCloud, 577 So.2d at 941.
[4] Section 782.051(1) provides:

Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an act that causes bodily injury to another commits a felony of the first degree, punishable by imprisonment for a term of years not exceeding life, or as provided in s. 775.082, s. 775.083, or s. 775.084, which is an offense ranked in level 9 of the sentencing guidelines. Victim injury points shall be scored under this subsection.
§ 782.051(1), Fla. Stat. (1997). In 1998, the Legislature substantially rewrote this section and renamed the title "Attempted felony murder." See § 782.051, Fla. Stat. (1999). Amended section 782.051(1) provides "Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony of the first degree...." Id.
[5] As the State correctly observes, section 782.051(1) expressly provides that felony causing bodily injury is a first-degree felony, a level 9 offense, and warrants the assessment of victim injury points. See § 782.051, Fla. Stat. (1997). As such, the Legislature clearly evinced its intent to create a new and substantive offense which is to be scored and sentenced separately from the enumerated felony (armed robbery).
[6] The First District in this case affirmed the convictions for attempted first degree murder and felony causing bodily injury and certified to this Court the following question: "Do convictions for attempted first degree murder and felony causing bodily injury on account of the same act amount to double jeopardy?" 761 So.2d at 1139.