# Supreme Court of Florida

_____

No. SC19-1947
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**JOSE MAISONET-MALDONADO,**
Respondent.

December 10, 2020

POLSTON, J.

This case is before the Court for review of the decision of the Fifth District

Court of Appeal in *Maisonet-Maldonado v. State*, 283 So. 3d 862 (Fla. 5th DCA

2019), in which the Fifth District certified the following question of great public

importance:

> DOES THE "SINGLE HOMICIDE" RULE FOUND IN *HOUSER V. STATE*, 474 SO. 2D 1193 (FLA. 1985), PRECLUDE SEPARATE CONVICTIONS OF VEHICULAR HOMICIDE AND FLEEING AND ELUDING CAUSING SERIOUS INJURY OR DEATH THAT INVOLVE THE SAME VICTIM?

*Maisonet-Maldonado*, 283 So. 3d at 863.  For the reasons explained below, we answer the certified question in the negative and quash the decision of the Fifth District.[1]

## I.  BACKGROUND

In 2010, Jose Maisonet-Maldonado stabbed his girlfriend, Berlitz Alvelo, and ran over her with a car, resulting in her death.  After fleeing the scene, Maisonet-Maldonado was quickly pursued by law enforcement officers.  He then led police on a dangerous, high-speed chase that ended when he crashed into another vehicle.  The vehicle's driver, James Laconte, sustained serious injuries, while the vehicle's passengers, Amanda Taylor and Francesca Jeffrey, were killed.

A jury convicted Maisonet-Maldonado of one count of first-degree murder with a weapon for the murder of Ms. Alvelo, three counts of fleeing or attempting to elude a law enforcement officer causing serious injury or death, and two counts of vehicular homicide.  Amanda Taylor and Francesca Jeffrey were each named as the victim for one count of fleeing and eluding causing serious bodily injury or death and one count of vehicular manslaughter.  Maisonet-Maldonado's convictions were upheld by the Fifth District in 2014.  *Maisonet-Maldonado v. State*, 149 So. 3d 34 (Fla. 5th DCA 2014).  In 2016, Maisonet-Maldonado filed a

_____

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850, alleging, among other things, that his convictions for vehicular homicide and fleeing or eluding a law enforcement officer causing serious injury or death violated the constitutional prohibition against double jeopardy. Noting that each offense contained a unique element, the lower court denied Maisonet-Maldonado's motion. Maisonet-Maldonado appealed.

On appeal, the Fifth District concluded that Maisonet-Maldonado's convictions were prohibited under the single homicide rule, which prohibits dual convictions for a single homicide under two different statutes. Relying on our decision in *Houser v. State*, 474 So. 2d 1193 (Fla. 1985), the Fifth District held that the single homicide rule "prohibits his convictions . . . for vehicular homicide and fleeing and eluding causing serious injury or death that involve the same victim." *Maisonet-Maldonado*, 283 So. 3d at 862. Accordingly, the Fifth District reversed the postconviction order and certified the question currently before us.

## II. ANALYSIS

Because the statutory language of section 775.021, Florida Statutes (2010), clearly states the intent of the Legislature to punish each available offense and does not provide an exception for offenses arising from a single death, we conclude that section 775.021 supersedes our decisions establishing the single homicide rule and that our decision holding otherwise, *State v. Chapman*, 625 So. 2d 838 (Fla. 1993),

- 3 -

was wrongly decided.[2]  Accordingly, we recede from *Chapman*, answer the

certified question in the negative, and quash the Fifth District's decision in

*Maisonet-Maldonado*.

## A.  Double Jeopardy Principles and the Single Homicide Rule

"As this Court has explained, both the United States and Florida

Constitutions contain double jeopardy clauses that 'prohibit[ ] subjecting a person

to multiple prosecutions, convictions, and punishments for the same criminal

offense.' " *State v. Shelley*, 176 So. 3d 914, 917 (Fla. 2015) (alteration in original)

(quoting *Valdes v. State*, 3 So. 3d 1067, 1069 (Fla. 2009)).  But "there is no

constitutional prohibition against multiple punishments for different offenses

arising out of the same criminal transaction as long as the Legislature intends to

authorize separate punishments." *Valdes*, 3 So. 3d at 1070.  "The prevailing

standard . . . is whether the Legislature 'intended to authorize separate punishments

for the two crimes.' " *Id.* (quoting *Gordon v. State*, 780 So. 2d 17, 19 (Fla. 2001),

*receded from on other grounds by Valdes*, 3 So. 3d at 1077).

" '[A]bsent an explicit statement of legislative intent to authorize separate

punishments for two crimes, application of the *Blockburger* [*v. United States*, 284

---

2.  "A double jeopardy claim based upon undisputed facts presents a pure
question of law and is reviewed de novo." *Pizzo v. State*, 945 So. 2d 1203, 1206
(Fla. 2006).

U.S. 299 (1932)] "same-elements" test pursuant to section 775.021(4), Florida

Statutes[,] is the sole method of determining whether multiple punishments are

double-jeopardy violations.' " *Shelley*, 176 So. 3d at 917 (alterations in original)

(quoting *Gaber v. State*, 684 So. 2d 189, 192 (Fla. 1996)).

Section 775.021(4) provides:

(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

§ 775.021(4), Fla. Stat. (2010). "The statute expresses the legislative intent that

defendants be charged with every offense that arises out of one criminal episode

*unless* an exception applies." *Gil v. State*, 118 So. 3d 787, 792 (Fla. 2013).

"Subsections (b)(1)-(3) have been described as setting forth 'exceptions to the

- 5 -

*Blockburger* same-elements test,' *Gaber*, 684 So. 2d at 192, because even if the offenses are separate under that test, dual convictions are barred if the offenses meet the criteria in one of the exceptions." *State v. Florida*, 894 So. 2d 941, 945 n.2 (Fla. 2005), *receded from on other grounds by Valdes*, 3 So. 3d at 1077.

In *Houser v. State*, 474 So. 2d 1193, 1196-97 (Fla. 1985), this Court held that convictions for DWI manslaughter and vehicular manslaughter were prohibited under double jeopardy principles, despite being separate offenses under a *Blockburger* analysis. Observing that the codified *Blockburger* test was only a "tool[ ] of statutory interpretation," the *Houser* Court established what would come to be known as the single homicide rule, that dual convictions for offenses resulting from a single death were prohibited in Florida. *Id.* at 1196. The Court concluded that it should "resolve[ ] all doubts in favor of lenity" and follow the presumption that the Legislature did not intent to punish a single homicide under two different statutes. *Carawan v. State*, 515 So. 2d 161, 170 (Fla. 1987) (describing *Houser*). This Court later reaffirmed the single homicide rule in *Carawan*, in which it held that dual punishments for attempted manslaughter and aggravated battery arising from a single act were similarly prohibited. *Id.* Embracing the rule of lenity in the context of double jeopardy, the *Carawan* Court found that "Florida's lenity requirement constitute[d] a rule of construction coequal to the *Blockburger* test codified in section 775.021(4)" and reconciled the

two by concluding that the rule of lenity prevailed "where there [was] a reasonable basis for concluding the legislature did not intent multiple punishments." *Id.* at 168.

The Legislature, however, disagreed with our decision in *Carawan* and, in 1988, enacted an amendment to section 775.021, Florida Statutes, to clarify that the principle of lenity should not be applied in a double jeopardy analysis. Ch. 88-131, § 7, Laws of Fla. ("The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent."); *State v. Smith*, 547 So. 2d 613, 616-17 (Fla. 1989) (explaining the 1988 amendment changes). Nonetheless, in *Chapman*, when addressing whether the Legislature's disavowal of *Carawan* and the principle of lenity affected the single homicide rule, this Court concluded that the 1988 amendment did not supersede *Houser* and that the single homicide rule was still the law in Florida. 625 So. 2d at 839 ("We see nothing more in the 1988 amendment than that it was intended to limit the rule of lenity and to override [*Carawan*]. Especially, we do not read the amendment as an overruling of *Houser* . . . ." (citations omitted)). Faced with a plain reading of section 775.021, however, we now conclude otherwise.

"A court's determination of the meaning of a statute begins with the language of the statute." *Halifax Hosp. Med. Ctr. v. State*, 278 So. 3d 545, 547 (Fla. 2019) (citing *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018)). If the language of the statute is clear, "the statute is given its plain meaning, and the court does not 'look behind the statute's plain language for legislative intent or resort to rules of statutory construction.' " *Id.* (quoting *City of Parker v. State*, 992 So. 2d 171, 176 (Fla. 2008)). For the following reasons, we conclude that the plain meaning of section 775.021, Florida Statutes, abolished the single homicide rule and superseded our decision in *Houser*, and thus our decision holding otherwise, *Chapman*, was incorrectly decided.

First, subsection (4)(a) expresses the intent of the Legislature that the text of the statutory offense, not the facts of the crime, are relevant for a double jeopardy analysis. *See Gaber*, 684 So. 2d at 190 ("Thus, we cannot examine facts from the record . . . . Rather our double-jeopardy analysis must look only to the statutory elements . . . ."). The subsection states that "[w]hoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate *criminal offenses*, upon conviction and adjudication of guilt, shall be sentenced separately for *each criminal offense*." § 775.021(4)(a), Fla. Stat. (2010) (emphasis added). Further it states that the question of whether offenses are separate should be determined "without regard to the accusatory pleading or the

- 8 -

proof adduced at trial." *Id.* After the 1988 amendment, the language of the statute specifically addresses a circumstance in which one criminal act constitutes more than one offense and makes clear that the Legislature intends to punish each available *offense*. Subsection (4)(a) rejects the "single underlying act" principle that had been previously employed to deduce legislative intent for the purposes of a double jeopardy analysis and clarifies that statutory language is the only factor for determining whether the Legislature intended to punish separate offenses. *See also Valdes*, 3 So. 3d at 1072-74 (rejecting the "primary evil" or "core offense" approach previously taken by this Court in interpreting section 775.021(4)(b)(2)). This textual change is incompatible with the single homicide rule because the single homicide rule requires a judge to look at the factual circumstances of the crime to determine whether the convictions arise from the same death.

Second, the Legislature clearly stated its intent to convict for all offenses that pass the *Blockburger* test and rejected the principle of lenity as it applies to double jeopardy analysis in the text of subsection (4)(b), undermining the reasoning of the *Houser* Court. Specifically, the amended language states that "[t]he intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent." This language conflicts with the *Houser* Court's conclusion that "Florida courts

have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes." *See Chapman*, 625 So. 2d at 839-40 (quoting *Houser*, 474 So. 2d at 1197). Further, as we have explained, the *Houser* decision and resulting single homicide rule were rooted in principles of lenity. *See Carawan*, 515 So. 2d at 170 ("Finding no legislative intent to the contrary, we therefore resolved all doubts in favor of lenity.") (summarizing *Houser*). But in the 1988 amendment to section 775.021, the Legislature provided clear language to the contrary and rejected the application of lenity in double jeopardy analysis.

Finally, subsection (4)(b) gives three exceptions to the *Blockburger* same-elements test, none of which recognizes the single homicide rule. The statute states that these exceptions "are" the exceptions to the same-elements test and does not use terms of expansion like "include" or "are not limited to," so we can conclude from the text that this list is exhaustive. *Cf. White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 781 (Fla. 2017) (concluding that "includes" introduces a nonexhaustive list). Exceptions 1 and 3 give specific exclusions based on the elements of proof needed for an offense, which can vary depending on the type of homicide offense. Exception 2 provides for offenses that are degrees of one another and only prohibits dual convictions for a single death for offenses that are explicitly designated as degree variants or aggravated forms of one another. *Valdes*, 3 So. 3d at 1075-76. None of these exceptions grants a

general protection against multiple convictions for offenses arising from a single death, and because the list is exhaustive, we may not add an exception where the text does not provide for one.

After the 1988 amendment, the plain language of section 775.021 clearly expresses that offenses which pass the codified *Blockburger* test should be punished separately and that there is no exception for offenses arising from a single death. Accordingly, we conclude that the 1988 amendment to section 775.021 superseded our decision in *Houser*, and our decision in *Chapman* holding otherwise was wrongly decided.

A conclusion that a predecessor Court has erred, however, does not end our analysis. As we have explained, "[w]hen we are convinced that a precedent clearly conflicts with the law we are sworn to uphold, precedent normally must yield. . . . But once we have chosen to reassess a precedent and have come to the conclusion that it is clearly erroneous, the proper question becomes whether there is a valid reason *why not* to recede from that precedent." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020). "The critical consideration ordinarily will be reliance." *Id.*

In evaluating reliance interests, courts consider "legitimate expectations of those who have reasonably relied on the precedent." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1415 (2020) (Kavanaugh, J., concurring in part). "It is generally accepted that reliance interests are 'at their acme in cases involving property and

- 11 -

contract rights.' " *Poole*, 297 So. 3d at 507 (quoting *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)). "And reliance interests are lowest in cases . . . 'involving procedural and evidentiary rules.' " *Id.* (quoting *Payne*, 501 U.S. at 828). "As the Supreme Court has observed, the role of *stare decisis* is reduced in the cases of procedural rules . . . that do not 'serve as a guide to lawful behavior.' " *Knight v. State*, 286 So. 3d 147, 154 (Fla. 2019) (quoting *United States v. Gaudin*, 515 U.S. 506, 521 (1995)).

In this case, Maisonet-Maldonado and other defendants who might benefit from the single homicide rule have minimal reliance interests in the *Chapman* decision. Maisonet-Maldonado does not claim to have changed his behavior based on the existence of the single homicide rule, nor does it appear that he has changed any legal positions to his detriment in reliance on the rule. Accordingly, we now recede from *State v. Chapman*, 625 So. 2d 838 (Fla. 1993), and hold that the 1988 amendment to section 775.021, Florida Statutes, superseded *Houser v. State*, 474 So. 2d 1193 (Fla. 1985), and that the single homicide rule is no longer applicable under Florida law.

### B. This Case

Proceeding to the facts at hand, we must address whether Maisonet-Maldonado's dual convictions for vehicular manslaughter and fleeing or eluding causing serious injury or death are prohibited under the same-elements test

- 12 -

codified in section 775.021(4), Florida Statutes.  We conclude that they are not prohibited and quash the decision of the Fifth District.

Maisonet-Maldonado contests his dual convictions for fleeing or eluding a law enforcement officer causing serious injury or death under section 316.1935(3)(b), Florida Statutes (2010), and vehicular manslaughter under section 782.071(1)(a), Florida Statutes (2010).  Section 316.1935(3)(b) makes it a first-degree felony to flee a law enforcement officer and drive in a wanton manner and cause serious bodily injury or death to another person:

> (3) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted eluding:
>
> . . . .
>
> (b) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, and causes serious bodily injury or death to another person, including any law enforcement officer involved in pursuing or otherwise attempting to effect a stop of the person's vehicle, commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.  Notwithstanding any other provision of law, the court shall sentence any person convicted of committing the offense described in this paragraph to a mandatory minimum sentence of 3 years imprisonment.  Nothing in this paragraph shall prevent a court from imposing a greater sentence of incarceration as authorized by law.

§ 316.1935(3)(b), Fla. Stat. (2010).

Section 782.071(1)(a) establishes vehicular homicide as a second-degree felony:

"Vehicular homicide" is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.

(1) Vehicular homicide is:

(a) A felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 782.071(1)(a), Fla. Stat. (2010).

"Under the plain meaning of section 775.021(4)(a), Florida Statutes (1993), a court is required to examine each of a defendant's convictions arising out of the same incident to determine whether 'each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.' " *Gaber*, 684 So. 2d at 190 (quoting § 775.021(4)(a), Fla. Stat. (1993)).  A court may not examine the facts of the record but may only examine the statutory elements of the two offenses to determine whether one requires proof of an element that the other does not.  *Id.* at 190-91.  Therefore, "when considering a statute that proscribes conduct in the alternative (offenses that can be committed in more than one way), the analysis must consider the entire range of conduct prohibited by the statutes, not the specific conduct charged or proven at trial."  *Tambriz-Ramirez v. State*, 248 So. 3d 1087, 1094 (Fla. 2018) (quoting *Tambriz-Ramirez v. State*, 213 So. 3d 920, 923 (Fla. 4th DCA 2017)).

Maisonet-Maldonado's dual convictions are not prohibited by section 775.021, Florida Statutes.  Fleeing or eluding a law enforcement officer causing

- 14 -

serious bodily injury or death requires the State to prove that a defendant (1) willfully fled or attempted to elude a law enforcement officer in an authorized vehicle, (2) drove at a high speed or manner demonstrating a wanton disregard for persons or property, and (3) caused serious bodily injury or death to another person. § 316.1935(3)(b), Fla. Stat. (2010). Vehicular homicide requires the State to prove that a defendant (1) killed a human being (2) by operation of a motor vehicle in reckless manner likely to cause the death of, or great bodily harm to, another. § 782.071(1)(a), Fla. Stat. (2010). The fleeing or eluding offense requires that the defendant be fleeing a law enforcement officer. Vehicular homicide requires that defendant kill another human being, which is not a required element in the fleeing or eluding statute even though it is sufficient conduct to establish an element of the crime. Simply put, a defendant can commit fleeing or eluding causing serious injury or death without committing vehicular homicide and can commit vehicular homicide without committing fleeing or eluding causing serious injury or death. *See Tambriz-Ramirez*, 248 So. 3d at 1095 ("In other words, one can commit a burglary with a battery without committing an attempted sexual battery.").

Additionally, none of the three statutory exceptions in section 775.021(4)(b) apply to Maisonet-Maldonado's offenses. First, the fleeing or eluding offense and vehicular manslaughter do not require identical elements of proof. Fleeing or

- 15 -

eluding causing serious injury or death requires proof of an attempt to flee, while vehicular manslaughter requires proof of death, which is not necessarily required for the fleeing or eluding offense. Second, the offenses are clearly not degree variants of each other because they do not share a common name, contain very different formal elements, and exist in completely different chapters of Florida Statutes. *See Valdes*, 3 So. 3d at 1075-76 (holding that the second exception only applies when a criminal statute itself provides for an offense with multiple degrees). Finally, because these two offenses satisfy the *Blockburger* same-elements test, the third exception does not apply because, as we explained in *Gaber*, "[i]f two statutory offenses are found to be separate under *Blockburger*, then the lesser offense is not subsumed by the greater offense." 684 So. 2d at 192.

## III. CONCLUSION

For the above reasons, we recede from *State v. Chapman*, 625 So. 2d 838 (Fla. 1993), and hold that this Court's decision in *Houser v. State*, 474 So. 2d 1193 (Fla. 1985), establishing the single homicide rule, was superseded by section 775.021, Florida Statutes (1988). Accordingly, we conclude that dual convictions for fleeing or eluding causing serious injury or death and vehicular manslaughter are not prohibited by section 775.021(4), Florida Statutes, answer the certified question in the negative, quash the Fifth District's decision in *Maisonet-Maldonado*, and remand for proceedings consistent with our decision.

It is so ordered.

CANADY, C.J., and LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

      Fifth District - Case No. 5D18-942

      (Orange County)

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, and Jeffrey Paul DeSousa, Deputy Solicitor General, Tallahassee, Florida,

      for Petitioner

James S. Purdy, Public Defender, Andrew Mich and Nancy Ryan, Assistant Public Defenders, Seventh Judicial Circuit, Daytona Beach, Florida,

      for Respondent