662 So.2d 1248 (1995)
Clifford LAINES, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-93.
District Court of Appeal of Florida, Third District.
June 14, 1995.
Order Denying Rehearing November 15, 1995.
Bennett H. Brummer, Public Defender, and Julie M. Levitt, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Elliot B. Kula, Asst. Atty. Gen., for appellee.
Before HUBBART, BASKIN and GREEN, JJ.
HUBBART, Judge.
This is an appeal by the defendant Clifford Laines from judgments of convictions and sentences for second-degree murder and aggravated battery, arising out of a homicidal attack against a single victim, which were entered below upon an adverse jury verdict. The defendant raises two points on appeal, both of which present, in part, reversible error.

I
First, the defendant contends that the trial court committed fundamental error in convicting *1249 the defendant of aggravated battery as the conviction was, in effect, barred by the defendant's constitutional privilege against double jeopardy. Because the defendant did not raise this objection at any time in the trial court, we conclude that the defendant has waived the point as to his adjudication of guilt, but not as to his sentence, for aggravated battery;[1] as to the sentence for this offense, we conclude that the point is welltaken.
As an abstract proposition, we agree with the state that second-degree murder [§ 782.04(2), Fla. Stat.] and aggravated battery [§ 784.045(1)(a), (2), Fla. Stat.]  the two offenses for which the defendant was sentenced below  each requires proof of an element that the other does not[2] and, accordingly, there is no double jeopardy bar under Section 775.021(4)(a), Florida Statutes (1993), as interpreted in State v. Smith, 547 So.2d 613 (Fla. 1989), to convicting and sentencing a defendant who "in the course of one criminal transaction or episode, commits an act or acts which constitute," § 775.021(4)(a), Fla. Stat. (1993), a violation of these two statutes. In the instant case, however, the defendant's acts do not constitute a violation of the aggravated battery statute, but only the second-degree murder statute, as it is clear that the defendant killed a single victim with a series of rapid-fire violent acts in a single transaction, all of which contributed to the victim's death. Because no one of these acts can be characterized as an aggravated battery, Section 775.021(4), Florida Statutes (1993), does not authorize a separate sentence for such an offense.
The evidence adduced at trial establishes that the defendant, without any legal justification, killed the victim in this case by committing a series of rapidly successive violent acts within an extremely short time frame: a blow to the victim's head with a pistol, immediately followed by two gunshots to the victim's body, immediately followed by more blows to the victim's body with a pistol; all of these homicidal acts were designed to effect the victim's death which, in fact, followed. Dr. Valerie Rao, an Associate Dade County Medical Examiner, was qualified at trial as an expert pathologist and testified that she conducted an autopsy on the victim's body. She found that the victim had been shot once in the neck and once in the abdomen at short range (eighteen inches or less); that the victim had injuries to both sides of the head, including four lacerations on the right side, all caused by a blunt instrument; and that, in her opinion, the cause of death was "[g]unshot wounds associated with the blunt injury he suffered to his head." (Tr. 201).
We fail to see how an aggravated battery can be parsed out of any of the murderous acts which the defendant committed during this criminal episode  whether those acts be gunshots or head blows, as, in totality, such acts indisputably led to the victim's death and thus constitute a murder. It is true that the head blows were not, in themselves, fatal, but, according to the associate medical examiner, they contributed to the victim's death along with the more lethal gunshot wounds. It is settled law that separate convictions and sentences under two homicide statutes [DUI manslaughter, § 316.193(3)(c)(3), Fla. Stat. (1993), and vehicular homicide, § 782.071, Fla. Stat. (1993)], for a single criminal homicide are constitutionally forbidden by the double jeopardy clause, because "Florida courts have repeatedly recognized that the legislature did not intend to punish a single [criminal] homicide under two different statutes." Houser v. State, 474 So.2d 1193, 1197 (Fla. 1985) (emphasis added). This result is still good law notwithstanding the subsequent 1988 amendment to Section 775.021(4), Florida Statutes (1993). State v. Chapman, 625 So.2d 838 (Fla. 1993). Moreover, to accept *1250 the state's contrary argument would mean that a separate aggravated battery was committed for every murderous head blow inflicted by the defendant on the deceased  a result which we think the legislature could not possibly have intended. It therefore follows that the defendant may not be punished for a single criminal homicide under two separate statutes, but only under one statute  namely, the second-degree murder statute; the defendant's sentence under the aggravated battery statute therefore cannot stand. Houser; Chapman.
Stated differently, a sentence for aggravated battery in this case is not authorized by Section 775.021(4)(a), Florida Statutes (1993), and is, accordingly, barred by double jeopardy because there was no evidence adduced at trial that the defendant "in the course of one criminal transaction or episode, commit[ted] an act or acts which constitute ... [the] separate criminal offense[]" of aggravated battery. § 775.021(4)(a), Fla. Stat. (1993). Indeed, if the defendant had only been charged with second-degree murder, a jury instruction on aggravated battery as a category 2 permissive lesser offense under Fla.R.Crim.P. 3.510(b) could not have been given by the trial court because the trial judge is expressly forbidden from instructing the jury "on any [permissive] lesser included offense as to which there is no evidence." Fla.R.Crim.P. 3.510(b); see State v. Wimberly, 498 So.2d 929 (Fla. 1986). It is settled that in a murder prosecution, the trial court may not instruct the jury on non-homicide lesser offenses like aggravated battery  where, as here, it is undisputed that the defendant killed the deceased  because there is no rational basis in the evidence to support a conviction for such an offense. Martin v. State, 342 So.2d 501 (Fla. 1977). Plainly, a homicidal assault on a victim by a defendant resulting in the victim's death, as here, constitutes a murder  and cannot possibly amount to a non-homicide offense instead of or in addition to the murder as there is no evidence to support it.

II
The defendant further contends that the trial court committed reversible error in imposing a sentencing guidelines departure sentence of life imprisonment for the second-degree murder conviction. We agree. Under the pre-1994 sentencing guidelines applicable to this case, written reasons for a sentencing guidelines departure must be issued contemporaneously when the departure sentence is imposed; where, as here, a trial court imposes a departure sentence and the next day files written reasons for the departure, the departure sentence must be reversed and the cause remanded to the trial court with directions to resentence the defendant within the sentencing guidelines range.[3]
The judgment of conviction for second-degree murder is affirmed, but the life imprisonment sentence imposed for this conviction is reversed and the cause is remanded to the trial court with directions to impose a sentence within the sentencing guidelines range. The judgment of conviction for aggravated battery is affirmed, but the fifteen-year sentence imposed for this conviction is reversed and the cause is remanded to the trial court with directions to vacate this sentence.
Affirmed in part; reversed and remanded in part.
GREEN, Judge (concurring in part, dissenting in part).
I must respectfully dissent in part. I believe that State v. Smith, 547 So.2d 613 (Fla. 1989) requires that we affirm Clifford Laines' conviction for both second degree murder and aggravated battery, as well as affirm the separate sentence imposed for the aggravated battery conviction.
*1251 The victim, Donny Anderson, was the boyfriend of Rose Smith. The couple had two children. At the time of the crime, Rose was dating Glen Laines, Clifford Laines' brother. Glen Laines and Donny Anderson had a history of "run-ins" with each other. This included the theft of Clifford Laines' Cadillac by a friend of Anderson and Anderson pulling a gun on Glen Laines. On the day of the crime, Anderson came to Rose's house to take their children to dinner. Glen and Clifford Laines went to Rose's house to repair her car.
Rose testified that she heard loud talking and then two quick gunshots. She ran outside and found Clifford standing over Anderson, hitting him on the head and repeating "Cadillac Brougham." Anderson was bleeding from the head and chest.
At trial, Dr. Valerie Rao, the medical examiner in the case, testified that the victim had head trauma and two gunshot wounds. The first bullet entered in the neck, punctured a lung and became embedded in a rib. Stippling around the wound indicated that the shot was fired at close range. The second bullet entered in the abdomen. Dr. Rao went on to testify as follows:
Q: Did you find  going back to gunshot wound B, the gunshot wound to the stomach, is that wound by and itself a fatal wound?
A: ... It is lethal, yes.
* * * * * *
Q: Did you do an examination of the victim's head?
A: Yes.
* * * * * *
Q: What trauma did you discover to his head?
A: He had injuries to both sides of his head. Lacerations meaning when the skin and the underlying tissue are torn that is laceration. It's not cut but it's torn on the right side. He had a group of four lacerations two centimeters in length and he had a 2.8 centimeters; below that 7 millimeters and a 6 centimeters.
So the whole group was on the right side. Lacerations were the full thickness of the scalp, which means it went all the way from the top portion right down to his skull. But he did not have any skull fractures.
Q: Doctor, do you have an opinion as to the cause of death in this case?
A: Yes.
Q: What is your opinion?
A: Gunshot wounds associated with the blunt injury he suffered to his head.
* * * * * *
Q: Doctor Rao, you testified that there was a series of blunt trauma wounds to the head, is that correct?
A: That's correct.
Q: Would these blunt trauma wounds in and of themselves be sufficient to cause death?
A: No. (Tr. 197-202).
Under subsection 775.021(4)(a), Florida Statutes (1991) "[w]hoever, in the course of one criminal transaction or episode commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense... ." The statute goes on to state that, "[f]or purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial. (emphasis added) The statute comports with the requirements of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as recently reaffirmed by United States v. Dixon, ___ U.S. ___, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).
It is clear that two separate types of injuries to the victim were committed in this case, but only one injury, the gunshots, caused the victim's death. The state, consistent with witness testimony, charged Laines with second degree murder for the fatal gunshots and aggravated battery for the head lacerations. Second degree murder and aggravated battery each requires proof of an element that the other does not. Second degree murder requires proof of death and aggravated battery requires proof of specific *1252 intent to cause great bodily harm, permanent disability or permanent disfigurement.
In State v. Smith, 547 So.2d 613 (Fla. 1989) the Florida Supreme Court reviewed the 1988 legislative amendment of subsection 775.021(4), Florida Statutes, in response to the court's decision in Carawan v. State, 515 So.2d 161 (Fla. 1987). In Carawan, the court assumed that the legislature did not intend to punish the same offense under two different statutes and concluded that a rule of lenity controlled and prohibited multiple punishments for two offenses, predicated on a single underlying act, even if each contained a unique statutory element and were separate offenses under subsection 775.021(4). In the session immediately following the issuance of Carawan, the legislature responded to the decision by amending subsection 775.021(4)(a). Smith, 547 So.2d at 615. The amendment contained a statement of legislative intent that made it abundantly clear that the legislature did not agree with the court's interpretation of subsection 775.021(4)(a)[1] as set out in Carawan. Smith laid out the specific areas of disagreement:
(1) The legislature rejects the distinction drawn between act or acts. Multiple punishment shall be imposed for separate offenses even if only one act is involved. (2) ... Subsection 775.021(4)(a) is the specific, clear and precise statement of legislative intent referred to in Carawan as the controlling polestar. Absent a statutory degree crime or a contrary clear and specific statement of legislative intent in the particular criminal offense statutes, all criminal offenses containing unique statutory elements shall be separately punished. (3) The subsection should be strictly applied without judicial gloss. (4) By listing the three instances when multiple punishments shall not be imposed, subsection 775.021(4)(a) eliminates the need to assume that the legislature does not intend multiple punishment for the same offense. Since the statutory test shall be used for determining whether offenses are the same or separate, there will be no occasion to apply the rule of lenity.
Id. at 616.
A primary rule of statutory construction is that courts never resort to rules of construction where the legislative intent is plain and unambiguous. Carawan v. State, 515 So.2d 161, 165 (Fla. 1987); Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); Reino v. State, 352 So.2d 853, 860 (Fla. 1977); Rinker Materials Corp. v. North Miami, 286 So.2d 552, 554 (Fla. 1973). The legislature stated in subsection 775.021(4) that the statutory test shall be the means for determining whether offenses are same or separate, regardless of the proof adduced at trial. The proof adduced at the trial in this cause showed that the gunshot to the abdomen was the fatal injury and the head trauma was only incidental. While we may not like the outcome, this is the result we are compelled to reach under State v. Smith and subsection 775.021(4)(a).
The majority correctly points out that in a post-Smith case, State v. Chapman, 625 So.2d 838 (Fla. 1993), the court refused to uphold separate convictions and sentences for a death under two homicide statutes, i.e., DUI manslaughter and vehicular homicide. We respectfully disagree with the conclusion that Chapman controls here. Chapman punished one death under two "death" statutes, both of which required the use of a vehicle. Laines has been adjudicated guilty of one death by a count for second degree murder. He has been adjudicated guilty of the non-fatal head lacerations by a count for aggravated battery. I believe that the extremely clear statement by the legislature in subsection 775.021(4)(a), as explained by the Florida Supreme Court in Smith, requires that we affirm the separate convictions and sentences in this case. See generally Moore v. State, 616 So.2d 168, 169 (Fla. 4th DCA 1993) ("We affirm appellant's convictions for second degree murder with a firearm and aggravated battery with a firearm.").
I agree with the majority that the departure sentence for the second degree murder *1253 conviction must be vacated on the authority of Ree v. State, 565 So.2d 1329 (Fla. 1990), modified by State v. Lyles, 576 So.2d 706 (Fla. 1991), receded from on other grounds Smith v. State, 598 So.2d 1063 (Fla. 1992). Under those cases, written reasons must be issued contemporaneously with the sentence when a departure is imposed.
Therefore, I would affirm both the convictions for second degree murder and aggravated battery but reverse the departure sentence for the second degree murder conviction and remand with instructions to impose a guideline sentence. Unlike the majority, however, I would affirm the separate sentence imposed for the aggravated battery conviction.

ON REHEARING
HUBBART, Judge.
The state has filed a motion for rehearing contending that as aggravated battery can, in fact, be parsed out of the defendant's single homicidal assault inflicted on the victim below. The state reasons that the victim suffered two distinct types of injuries in this case: trauma to the head inflicted by a series of physical blows with a pistol, and two gunshot wounds inflicted by the same pistol. Because the head injuries were admittedly not in themselves sufficient to cause death, it is urged that the head blows constitute a single composite aggravated battery.
The fatal flaw in this reasoning, however, is that the subject head blows, did, in fact, contribute to the victim's death, along with the gunshot wounds, and were inexorably bound up in a single homicidal assault committed at precisely the same time and place; as previously stated, the associate medical examiner testified below that the victim died due to gunshot wounds "associated with the blunt injury he suffered to the head." True, the head blows were not the "but for" cause of the victim's death, but clearly such blows medically contributed to, and were a "substantial factor" in bringing about, such death; accordingly, both the head blows and the gun shot wounds together were the cause-in-fact of the victim's death. See Velazquez v. State, 561 So.2d 347, 350-51 (Fla. 3d DCA), rev. denied, 570 So.2d 1306 (Fla. 1990).
Moreover, to accept the state's reasoning would mean that a separate aggravated battery was committed for every head blow inflicted on the victim  not one composite aggravated battery for the entire series of head blows, as the state urges. Necessarily, this would mean that in every criminal homicide case involving multiple gun shots wounds or physical blows inflicted on the victim in a single criminal incident, as here, each shot or blow which failed the "but for" test could be prosecuted as an aggravated battery or attempted murder  although, as here, every one of the shots and blows contributed to, and were a substantial factor in bringing about, the death of the victim. Clearly, this would be an absurd result which we are confident the legislature did not intend; all of the subject gun shot wounds and blows must be treated as the cause-in-fact of the victim's death because all were a substantial factor in causing such death. See Velazquez.
The instant case, however, must be distinguished from Delorme v. State, 562 So.2d 398 (Fla. 3d DCA 1990), relied on by the state. In Delorme, unlike the instant case, "the victim suffered serious injuries as a result of [an] aggravated battery, separate and distinct, both in time and kind, from those injuries later inflicted to cause her death." Id. at 400 (emphasis added); in other words, in Delorme, there were two separate assaults on the victim separated in time. Not so in the instant case where we deal with a single homicidal assault complete with pistol blows and shots all inflicted at the same time and place within a matter of seconds. We agree that if the head blows herein had been inflicted at a different time and place from the gun shot wounds, albeit on the dame day  as in the Delorme scenario  a separate aggravated battery, preceding the murder, would have occurred. However, that is not what happened in this case.
For the above-stated reasons, the state's motion for rehearing is
Denied.
*1254 BASKIN, J., concurs.
GREEN, J., dissents for the reasons stated in the dissent of the panel opinion.
NOTES
[1] Graham v. State, 631 So.2d 388 (Fla. 1st DCA 1994); Perrin v. State, 599 So.2d 1365 (Fla. 1st DCA 1992); Wright v. State, 573 So.2d 998 (Fla. 1st DCA 1991) (citing Hines v. State, 401 So.2d 878 (Fla. 3d DCA 1981)).
[2] Second-degree murder requires proof of the element of death, which aggravated battery does not require; aggravated battery, in turn, requires proof of an element that the defendant either (a) intentionally caused great bodily harm, permanent disability or disfigurement, or (b) used a deadly weapon, which second-degree murder does not require.
[3] Owens v. State, 598 So.2d 64-65 (Fla. 1992) (citing Pope v. State, 561 So.2d 554, 556 (Fla. 1990)); Ree v. State, 565 So.2d 1329 (Fla. 1990), modified by State v. Lyles, 576 So.2d 706 (Fla. 1991), and receded from on other grounds by, Smith v. State, 598 So.2d 1063 (Fla. 1992).

The 1994 sentencing guidelines, inapplicable here, change this requirement so that written reasons for a departure sentence imposed for an offense committed on or after January 1, 1994, unlike this case, may be filed within fifteen days after the date of sentencing. § 921.0016(1)(c), Fla. Stat. (1993); Fla.R.Crim.P. 3.702(d)(18)(A); see § 921.001(4)(b)(2), Fla. Stat. (Supp. 1994).
[1] Chapter 88-131, § 7, Laws of Florida (1988). As a further example of how strongly the legislature felt about overriding Carawan, this section expressly was made effective July 1, 1988, whereas the other sections in chapter 88-131 were made effective October 1, 1988. Smith, 547 So.2d at 617 (Shaw, J. concurring in part and dissenting in part).