718 So.2d 327 (1998)
Christine CAMPBELL-ELEY, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1491.
District Court of Appeal of Florida, Fourth District.
September 16, 1998.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carol Cobourn Asbury, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Chief Judge.
We reverse Appellant's conviction for second-degree murder and aggravated battery on a pregnant woman. The trial court *328 abused its discretion by forbidding defense counsel from asking prospective jurors whether they could be fair and impartial in a case where the victim was pregnant and the fetus did not survive. The trial court also erred by denying Appellant's motion to sever offenses.
Appellant was on trial for stabbing the pregnant victim multiple times in a confrontation over the use of a pay telephone. During voir dire, the prosecutor asked the following:
As the Judge has told you, the defendant here is charged with second-degree murder and aggravated battery on a pregnant woman. Is there anyone, just because of the mere charges involved, feels that they cannotthey would bethey could not sit here in judgment, as a juror, for religious or any other moral reasons, and make a call on these two charges? Anyone in the first row?
The prosecutor did not bring up the fact that the fetus died, but this possibility came to light when a juror offered his feelings on the matter:
Juror: Well, I consider it two murders, really.
Prosecution: Is that from what you've heard?
Juror: No. Didn't the baby live?
Prosecution: Well, the evidenceI can't discuss the evidence at this point in time, okay? But the charge is battery on a pregnant woman and one count of second-degree murder. Do you think, if the law instructs you to followto define those crimes, can you follow that definition.
Juror: Well, if the baby dies, I consider it two murders.
* * *
Prosecution: If the Judge says that's not really an issue for you to consider, do you think you'll bring that in?
Juror: Yeah.
The prosecutor then asked if there was "anybody else who echoes those kind of feelings." Another juror stated that "the idea of a mother-child situation does tend to have some prejudice for me," but assured the prosecutor that she could set aside any feelings of bias. A third juror stated, "Just to be up-front and honest, this whole murder mother-baby thing gives me a little bit of kind of a sick-sad feeling to have somebody's life in my hands or whatever youjust to be honest with you."
Prior to the defense's examination of the jury, defense counsel moved in limine to exclude evidence that the fetus did not survive. The court stated that it would not hear a motion in limine during jury selection. The defense then sought to question the jurors as to whether they could be fair in a case where a victim was pregnant and the fetus did not survive. The court, however, would not permit such an inquiry.
We recognize that the failure of the fetus to survive was not relevant to the material issues in the case. However, the defense's need to ask about matters relevant to possible juror bias is not necessarily limited to matters relevant to the elements of the crime charged. Counsel should not be restricted from seeking information essential to the fair and just exercise of the right to challenge jurors, either peremptorily or for cause. Perry v. State, 675 So.2d 976, 979 (Fla. 4th DCA 1996); Watson v. State, 693 So.2d 69 (Fla. 2d DCA 1997).
Here, it was likely that information about the fetus' death would reach the jury. In fact, the jurors did learn that the fetus died when the medical examiner testified that during the autopsy, he found a five month old female fetus in the victim's uterus. The defense was understandably concerned that this information would create strong prejudicial feelings in the minds of the jurors. The death of the fetus raises questions of whether a juror, because of religious or moral convictions, considers a fetus a life in being and believes its death should constitute a separate murder. If a juror cannot accept that the killing of a mother and fetus constitutes only one murder, that juror might be unable to be fair and impartial and might seek to impose a higher degree of guilt for the single murder charge. The fact that one of the jurors acknowledged that he could not be impartial for exactly that reason highlights *329 the importance of allowing the defense the opportunity to question other jurors on the matter. See Perry, 675 So.2d at 979 (examination of a juror has the dual purpose of ascertaining whether a challenge for cause exists or whether a peremptory challenge should be made). The defense had reason for concern, as this issue could generate such strong emotional reactions that a juror might have difficulty following the court's instructions on the law. See Lavado v. State, 492 So.2d 1322 (Fla.1986) (holding that the court erred by preventing counsel from exploring the prospective jurors' willingness to follow the law with respect to the defense of voluntary intoxication); Sisto v. Aetna Cas. & Sur. Co., 689 So.2d 438 (Fla. 4th DCA 1997) (holding that the trial court erred by preventing counsel from asking any questions on damages where counsel sought to explore whether the jurors possessed strong preconceived feelings toward personal injury lawsuits and the award of non-economic damages); Moses v. State, 535 So.2d 350 (Fla. 4th DCA 1988) (holding that the trial court erred by preventing the defense from questioning the jurors as to whether they harbored an unyielding bias against the defendant because he was a convicted felon); see generally Vaczek v. State, 477 So.2d 1034, 1035 (Fla. 5th DCA 1985) (discussing the inflammatory nature of evidence that a victim lost her unborn child); Lewek v. State, 702 So.2d 527, 533-34 (Fla. 4th DCA 1997).
The trial court also erred by denying Appellant's motion to sever the charges of second-degree murder and aggravated battery on a pregnant woman. Dual convictions under both of these charges based on the same homicidal assault are prohibited on the grounds of double jeopardy. See Laines v. State, 662 So.2d 1248 (Fla. 3d DCA 1995), receded from on other grounds, Grene v. State, 702 So.2d 510 (Fla. 3d DCA 1996).
A defendant may be punished for separate criminal offenses arising out of the same criminal episode where each offense requires proof of an element that the other does not. See § 775.021(4)(a), Fla. Stat. (1997); State v. Smith, 547 So.2d 613 (Fla. 1989). However, the circumstances here are similar to those in Laines, in which the court, after recognizing that second-degree murder and aggravated battery each requires an additional element, nevertheless considered dual convictions for these offenses impermissible based on a single criminal homicide. 662 So.2d at 1249-50. The Laines court concluded that the defendant's acts could only constitute a violation of the second-degree murder statute where "the defendant killed a single victim with a series of rapid-fire violent acts in a single transaction, all of which contributed to the victim's death." Id. at 1249. Despite the amendment to section 775.021(4), the Laines court reasoned that the legislature did not intend to create a separate offense for every murderous blow that a defendant inflicted upon a deceased in a single incident. Id. at 1249. It further explained:
Stated differently, a sentence for aggravated battery in this case is not authorized by Section 775.021(4)(a), Florida Statutes (1993), and is, accordingly, barred by double jeopardy because there was no evidence adduced at trial that the defendant "in the course of one criminal transaction or episode, commit[ted] an act or acts which constitute ... [the] separate criminal offense[]" of aggravated battery. Sec. 775.021(4)(a), Fla. Stat. (1993). Indeed, if the defendant had only been charged with second-degree murder, a jury instruction on aggravated battery as a category 2 permissive lesser offense under Fla. R.Crim. P. 3.510(b) could not have been given by the trial court because the trial judge is expressly forbidden from instructing the jury "on any [permissive] lesser included offense as to which there is no evidence." Fla. R.Crim. P. 3.510(b); see State v. Wimberly, 498 So.2d 929 (Fla. 1986). It is settled that in a murder prosecution, the trial court may not instruct the jury on non-homicide lesser offenses like aggravated batterywhere, as here, it is undisputed that the defendant killed the deceasedbecause there is no rational basis in the evidence to support a conviction for such an offense. Martin v. State, 342 So.2d 501 (Fla.1977). Plainly, a homicidal assault on a victim by a defendant resulting in the victim's death, as here, constitutes *330 a murderand cannot possibly amount to a non-homicide offense instead of or in addition to the murder as there is no evidence to support it.
In determining whether the convictions were based on a single criminal homicide, the court looked to the fact that the blows were part of a series of violent acts which "in totality, ... indisputedly [sic] led to the victim's death and thus constitute a murder." Id. at 1249. In Laines, the defendant struck the victim in the head with a pistol, shot him twice, and struck him again with the pistol. Although the head blows were not in themselves fatal, the medical examiner opined that they contributed to the victim's death along with the gunshot wounds. Id. at 1249. The court ultimately concluded that the wounds and blows together should be treated as the cause-in-fact of death and that the homicide subsumed the aggravated battery because it was "a single homicidal assault complete with pistol blows and shots all inflicted at the same time and place within a matter of seconds." Id. at 1253.
The state suggests that the instant case does not involve a single criminal homicide because the first two of the three stab wounds did not cause the victim's death. The first wound was five-eighths of an inch deep and penetrated the chest wall. When asked if these wounds contributed to the victim's death, the medical examiner stated, "Well, of course, the small oneeighth-inch wound didn't do much. The second wound just went into the chest wall. They were not, in themselves, fatal wounds, but they didn't do any good." As the blows in the instant case occurred in rapid succession in a matter of seconds and were part of the violent acts which undisputedly led to the victim's murder, we conclude that they were all part of a single homicidal assault. We emphasize that this case does not involve a situation, as recognized in Donaldson v. State, 23 Fla. L. Weekly S245, S246-47, ___ So.2d ___, ___ _ ___ (Fla. Apr. 30, 1998), where the evidence supported a second conviction based on a separate torture or other independent act.
The state also contends that the dual convictions are not improper because the state is not charging for each separate blow, but instead, for a separate contingencythat the victim was pregnant. While the policy that inspired the legislature to pass section 784.045(1)(b), Florida Statutes, may be to protect the unborn fetus as well as the mother, there is no authority for our treating this aggravated battery section different from aggravated battery charges in sections 784.045(1)(a)1. and 2. for double jeopardy purposes. We note that the victim in section 784.045(1)(b), as worded, is the mother, not the fetus.
Therefore, we reverse both convictions and remand for new trial on the homicide charge. All other issues raised are moot.
STEVENSON and TAYLOR, JJ., concur.