894 So.2d 941 (2005)
STATE of Florida, Petitioner,
v.
Arthur FLORIDA, Respondent.
No. SC03-1318.
Supreme Court of Florida.
February 17, 2005.
*943 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Celia Terenzio, Senior Assistant Attorney General, Don M. Rogers, Assistant Attorney General, West Palm Beach, and Wesley Heidt, Assistant Attorney General, Daytona Beach, FL, for Petitioner.
Robert R. Feagin, III and Susan L. Kelsey of Holland and Knight, LLP, Tallahassee, FL, for Respondent.
*944 PER CURIAM.
The issue in this case is whether a defendant may be convicted of both attempted second-degree murder with a firearm and aggravated battery on a law enforcement officer for the single act of shooting a police officer. We review Florida v. State, 855 So.2d 109 (Fla. 4th DCA 2003), in which the Fourth District Court of Appeal held that the dual convictions violated the Double Jeopardy Clauses of the state and federal constitutions.[1] The Fourth District acknowledged that its decision is in express and direct conflict with Schirmer v. State, 837 So.2d 587, 589 (Fla. 5th DCA 2003), in which the Fifth District Court of Appeal affirmed convictions for attempted second-degree murder and aggravated battery for a single stabbing. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we hold that dual convictions of aggravated battery with a deadly weapon and attempted second-degree murder for a single act of stabbing or shooting a victim do not violate double jeopardy.

FACTS AND PROCEDURAL HISTORY
The defendant, Arthur Florida, shot a police officer in the head during a criminal episode that also involved other offenses. The State charged the defendant with attempted first-degree murder of a law enforcement officer (LEO) in count VI and attempted first-degree murder in count VII, alleging in both counts that Florida shot an officer in the head with a handgun. On count VI, the verdict choices were guilty as charged of attempted murder of a LEO, guilty of aggravated battery of a LEO, guilty of aggravated battery, and not guilty. On count VII, the verdict choices were guilty of attempted first-degree murder, guilty of attempted second-degree murder with a firearm, guilty of aggravated battery, and not guilty. The jury found the defendant guilty of aggravated battery on a LEO on count VI and guilty of attempted second-degree murder with a firearm on count VII. At sentencing, defense counsel moved to vacate the conviction on count VI on double jeopardy grounds, asserting that counts VI and VII "allege the same exact conduct as each other." The State requested that the trial court withhold sentence on one of the counts, but argued that dual convictions would not cause a double jeopardy violation because each crime had at least one element distinct from the other. The trial court withheld sentence on count VI, but adjudicated the defendant guilty of the offense of aggravated battery on a LEO. On count VII, the trial court adjudicated the defendant guilty of attempted second-degree murder with a firearm and sentenced him to life imprisonment as a habitual violent felony offender.
On direct appeal, the Fourth District affirmed the defendant's convictions and sentences per curiam without opinion. See Florida v. State, 701 So.2d 881 (Fla. 4th DCA 1997). The defendant moved for postconviction relief, asserting, inter alia, that the convictions on counts VI and VII for shooting the police officer caused a double jeopardy violation. The trial court summarily denied the motion, but the Fourth District reversed and ruled that the conviction on count VI must be vacated. See Florida, 855 So.2d at 111. The Fourth District also concluded that the dual convictions constituted fundamental error, and the error was not rendered harmless by the withholding of sentence on count VI. See id.

ANALYSIS
Initially, we note that the defendant's double jeopardy claim was properly *945 raised in a motion for postconviction relief. See Lippman v. State, 633 So.2d 1061, 1064-65 (Fla.1994) (holding that a double jeopardy claim raises a question of fundamental error which is not procedurally barred when raised initially in rule 3.850 proceedings). Second, because the issue requires only a legal determination based on undisputed facts, our standard of review is de novo. See Trotter v. State, 825 So.2d 362, 365 (Fla.2002) (stating that sentencing claim presenting double jeopardy and due process issues is reviewed de novo); see generally Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000) ("[T]he standard of review for a pure question of law is de novo.").
Under our precedent, absent a clear statement of legislative intent, the test of whether multiple convictions for an act or acts committed during a single episode constitute double jeopardy is governed by Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See Gordon v. State, 780 So.2d 17, 19-20 (Fla.2001). Under Blockburger, dual convictions are authorized only if each offense contains an element that the other does not. See id. at 20; Gaber v. State, 684 So.2d 189, 192 (Fla.1996). The Blockburger test is codified in section 775.021(4)(a), Florida Statutes (2004). Section 775.021(4) provides in full:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
Under section 775.021(4)(a) and Blockburger, multiple convictions for an act or acts in a criminal episode are unauthorized if each offense does not contain at least one element distinct from the other offenses. Under section 775.021(4)(b), multiple convictions are unauthorized if the offenses fall within one of the three statutory exceptions to the requirement of separate convictions and sentences.[2]
To apply section 775.021(4), we must determine the elements of the two offenses. The crime of attempted second-degree murder is codified in section 777.04(1), Florida Statutes (2004), which defines attempt, and section 782.04(2), Florida Statutes (2004), which defines second-degree murder. As reflected in the standard jury instructions, attempted second-degree murder has two elements: (1) the defendant intentionally committed an *946 act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. See Brown v. State, 790 So.2d 389, 390 (Fla.2000); State v. Brady, 745 So.2d 954, 957 (Fla.1999). Use of a firearm is a third element that increases the penalty for the crime. The statutory elements of aggravated battery of a law enforcement officer are (1) commission of a battery (2) on a law enforcement officer (3) in which the perpetrator either knowingly caused great bodily harm, permanent disability or permanent disfigurement to the victim, or used a deadly weapon. See §§ 784.045(1)(a)(1)-(2), 784.07(2)(d), Fla. Stat. (2004).
In Gordon, this Court addressed a claim that convictions of attempted murder and aggravated battery were unauthorized. We held that convictions of attempted first-degree murder, felony causing bodily injury, and aggravated battery causing great bodily harm were authorized for the defendant's act of shooting the victim during a robbery. See 780 So.2d at 18, 25. We concluded that each offense contained an element not contained in the others, and that none of the three exceptions to the presumption of multiple convictions in section 775.021(4)(b) applied. Applying the Blockburger test, this Court stated that
attempted first-degree murder is distinguishable from aggravated battery because the latter requires an intent to cause great bodily harm, not an intent to kill, which is necessary for attempted first-degree murder. Likewise, aggravated battery requires great bodily harm, whereas attempted first-degree murder does not. The attempt to kill the victim is a separate and distinct act which is complete when the gun is fired  regardless of whether the target is hit. Thus, the Blockburger analysis also indicates that attempted first-degree murder and aggravated battery are separately punishable.
Id. at 22.
The State argues that Gordon controls the Blockburger analysis in this case, although one of the convictions is attempted second-degree murder rather than attempted first-degree murder. While he does not discuss Gordon, the respondent in this case asserts that the crimes are the same under Blockburger because the act which is reasonably certain to cause death or great bodily harm necessary for second-degree murder is the same act necessary to establish the intentional infliction of bodily harm for aggravated battery, making the elements congruent. The State responds that although the act may be the same, the elements of the crimes differ.
The State is correct. Under the Blockburger test codified in section 775.021(4)(a), attempted second-degree murder and aggravated battery with a deadly weapon each has an element distinct from the other. Victim contact is unnecessary for attempted second-degree murder but essential to aggravated battery, and unlike attempted second-degree murder, an act need not have had the potential to cause death to constitute aggravated battery. See Schirmer, 837 So.2d at 589. Thus, even apart from the additional elements of the law enforcement officer victim in count VI and the use of a firearm in count VII, the offenses are separate under Blockburger and section 775.021(4)(a). Therefore, separate convictions are authorized unless the offenses come within one of the exceptions in subsection (4)(b).
Subsection (4)(b)(1), which concerns offenses that "require identical elements of proof," does not apply here. Victim contact is not a required element of *947 proof for attempted second-degree murder; the requirement of attempted second-degree murder that the defendant's act could have caused death is not a required element of aggravated battery. The respondent does not argue that dual convictions are unauthorized under section 775.021(4)(b)(1).
Leaving aside section 775.021(4)(b)(2) for the moment, the next exception we consider is in subsection (4)(b)(3), which applies to "[o]ffenses which are lesser offenses the statutory elements of which are subsumed by the greater offense." The respondent asserts that even if the offenses are separate under Blockburger, dual convictions are unauthorized under this provision because aggravated battery is a lesser included offense of attempted second-degree murder. However, subsection (4)(b)(3) applies only to necessarily lesser included offenses listed in Category 1 of the Schedule of Lesser Included Offenses, and aggravated battery is listed in Category 2 as a permissibly lesser included offense of attempted second-degree murder. This Court has explained:
When the commission of one offense always results in the commission of another, then the latter is an inherent component of the former. In other words, the Blockburger test by its very nature is designed to distinguish between that group of crimes that are "necessarily lesser included" offenses and that group of crimes that are not.
State v. Weller, 590 So.2d 923, 926 (Fla.1991). Under this standard, necessarily lesser included offenses are those in which the elements of the lesser offense are always subsumed within the greater, without regard to the charging document or evidence at trial. See State v. McCloud, 577 So.2d 939, 941 (Fla.1991) (holding that "an offense is a lesser-included offense for purposes of section 775.021(4) only if the greater offense necessarily includes the lesser offense"). In contrast,
[a] permissive lesser included offense differs in that it cannot be determined to fall within Category 2 unless both the statutory elements and the facts alleged in the accusatory pleadings are consulted. In other words, on the face of the statutes, the two offenses appear to be separate, but the facts alleged in the accusatory pleadings are such that the lesser offense cannot help but be perpetrated once the greater offense has been.
Weller, 590 So.2d at 925 n. 2.
As this Court stated in Gordon, 780 So.2d at 21 n. 3, and the Fifth District recognized in Schirmer, 837 So.2d at 588-89, subsection (4)(b)(3) applies only to necessarily lesser included offenses, those listed in Category 1. See also Gaber, 684 So.2d at 192 (concluding as grounds for rejection of claim to subsection (4)(b)(3) exception that "[i]f two statutory offenses are found to be separate under Blockburger, then the lesser offense is not subsumed by the greater offense"). Consistent with the Court's determination in Gordon, 780 So.2d at 21 n. 3, that this exception does not apply to dual convictions of attempted first-degree murder and its Category 2 permissibly lesser included offense of aggravated battery, subsection (4)(b)(3) is inapplicable to the offenses of attempted second-degree murder and aggravated battery (with or without the law enforcement victim enhancement) in this case.
The Fourth District, in deciding below that the dual convictions in this case resulted in a double jeopardy violation, did not directly discuss lesser included offenses. See Florida, 855 So.2d at 111. Instead, the Fourth District relied in part on its decision in Gresham v. State, 725 *948 So.2d 419, 420 (Fla. 4th DCA 1999), in which the court recognized that aggravated battery is a Category 2 lesser included offense of attempted second-degree murder but held nonetheless that convictions of both crimes for the single act of stabbing the victim violated double jeopardy. The Fourth District stated in Gresham that "both the pleading and the evidence relied on by the state at trial are consistent with the stabbing being committed as part of the attempted second degree murder." 725 So.2d at 421. The Fifth District in Schirmer expressly declined to follow Gresham, concluding, in accord with this Court's precedent, that the exception in section 775.021(4)(b)(3) applies only to Category 1 or necessarily lesser included offenses, in which the pleadings and evidence are irrelevant. See Schirmer, 837 So.2d at 588-89.[3] The Fifth District's conclusion that section 775.021(4)(b)(3) does not preclude dual convictions of aggravated battery and attempted second-degree murder is correct.
The final potential statutory bar to dual convictions that must be addressed is section 775.021(4)(b)(2), which is not discussed by either the Fourth District in this case or the Fifth District in Schirmer. The State asserts that subsection (4)(b)(2) is inapplicable because attempted second-degree murder and aggravated battery are derived from different core offenses, and thus neither is a degree variant of the other.
The terms "core offense" and "degree variant" entered this Court's lexicon in Sirmons v. State, 634 So.2d 153, 154 (Fla.1994). This Court held in Sirmons that dual convictions of armed robbery and grand theft of an automobile were unauthorized because "these offenses are merely degree variants of the core offense of theft." Id.; see also State v. Thompson, 607 So.2d 422, 422 (Fla.1992) (adopting district court decision holding that dual convictions of fraudulent sale of a counterfeit controlled substance and felony petit theft for the same act are barred because the offenses are both degrees of theft); Johnson v. State, 597 So.2d 798, 799 (Fla.1992) (holding that dual convictions of theft of a handbag and of a firearm contained therein are unauthorized for a taking accomplished with "one intent and one act.")
The State, in asserting that the construction of subsection (4)(b)(2) adopted in Sirmons is inapplicable here, again points to Gordon, in which this Court rejected the claim that attempted first-degree murder and aggravated battery causing great bodily harm were degree variants of the crime of injuring someone. Relying on Justice Kogan's observation in Sirmons that "theft, battery, possession of contraband and homicide are the type of core offenses upon which other criminal charges are based," Gordon, 780 So.2d at 23 (citing Sirmons, 634 So.2d at 155 (Kogan, J., concurring)), the Court concluded that attempted first-degree murder punishes the intent to kill, whereas aggravated battery causing great bodily harm punishes the act of seriously injuring another person. The Court quoted with approval Justice Shaw's dissenting opinion in Carawan v. State, 515 So.2d 161 (Fla.1987):
The primary evil of aggravated battery is that it inflicts physical injury on the victim; the primary evil of attempted *949 homicide is that it may inflict death; there is no requirement that the state prove any physical injury. The two statutes are not addressed to the same evil. The relationship between aggravated battery and attempted homicide is different than that between aggravated battery and actual, not attempted, homicide.
Id. at 173 (Shaw, J., dissenting), quoted in Gordon, 780 So.2d at 23.
Gordon controls our application of section 775.021(4)(b)(2) to the convictions of both aggravated battery on a LEO in count VI and attempted second-degree murder with a firearm in count VII. The primary evil of aggravated battery is an intentional, nonconsensual touching or striking, whereas the primary evil of attempted second-degree murder is the potential of the defendant's act to cause death. The evil of battery omits lethal potential, and the evil of attempted second-degree murder omits victim contact. Thus, the two crimes are not merely degree variants of the same core offense, and therefore do not come within the exception to the requirement of separate convictions set out in section 775.021(4)(b)(2).
Accordingly, the offenses of aggravated battery on a law enforcement officer and attempted second-degree murder with a firearm do not violate the constitutional ban on double jeopardy and are not exempt from the requirement of separate convictions under section 775.021(4), Florida Statutes.

CONCLUSION
For the reasons expressed herein, we quash the Fourth District decision in this case and remand for affirmance of the trial court's order denying relief on this issue, and approve the Fifth District's decision in Schirmer.
It is so ordered.
WELLS, LEWIS, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., dissents with an opinion, in which ANSTEAD, J., concurs.
QUINCE, J., dissents with an opinion, in which PARIENTE, C.J., and ANSTEAD, J., concur.
PARIENTE, C.J., dissenting.
While nothing in the constitutional right against double jeopardy prevents a defendant from being charged and convicted of multiple separate crimes arising from a single act, double jeopardy does prevent a defendant from being convicted twice of the same core offense. Yet the majority decision today permits dual convictions on degree variants of the same core offense, battery, for firing one shot that struck a police officer.
The illogic of this result is demonstrated by what would have happened if the defendant had been convicted of the crimes actually charged in counts VI and VII. In that event, double jeopardy would have prevented him from being convicted twice of attempted murder of the same victim. Further, had the victim died and the defendant been found guilty of a completed murder, a separate conviction for the same act would also have to be vacated. See Campbell-Eley v. State, 718 So.2d 327 (Fla. 4th DCA 1998); Laines v. State, 662 So.2d 1248 (Fla. 3d DCA 1995), receded from on other grounds, Grene v. State, 702 So.2d 510 (Fla. 3d DCA 1996). Instead, because the victim survived and the jury found the defendant guilty of two distinct lesser included offenses, aggravated battery of a LEO in count VI and attempted second-degree murder with a firearm in count VII, the majority concludes that no double jeopardy violation occurred.
*950 Something is wrong with this picture  and with the underlying analysis. In Gordon v. State, 780 So.2d 17 (Fla.2001), we held that convictions as charged of attempted first-degree murder with a firearm and aggravated battery causing great bodily harm did not cause a double jeopardy violation. In light of the almost identical counts of attempted murder charged for a single act in this case, which resulted in convictions of different lesser included offenses, it is now clear to me that Gordon rests upon an error in legal analysis and is unacceptable in actual practice. See Puryear v. State, 810 So.2d 901, 905 (Fla.2002) ("The doctrine of stare decisis bends where ... there has been an error in legal analysis."); Brown v. State, 719 So.2d 882, 890 (Fla.1998) (Wells, J., dissenting) ("[I]ntellectual honesty continues to demand that precedent be followed unless there has been a clear showing that the earlier decision was factually or legally erroneous or has not proven acceptable in actual practice.").
In Gordon, this Court approved a district court decision affirming convictions of attempted first-degree murder, aggravated battery causing great bodily harm, and felony causing bodily injury for the defendant's act of shooting the victim during a robbery attempt. See 780 So.2d at 18, 25. Applying the exception in section 775.021(4)(b)(2), Florida Statutes (2004), to the statement of legislative preference that a defendant be convicted for each crime committed in a criminal episode, we adopted language from Justice Shaw's dissenting opinion in Carawan v. State, 515 So.2d 161, 173 (Fla.1987). Justice Shaw stated in Carawan that "[t]he primary evil of aggravated battery is that it inflicts physical injury on the victim[, whereas] the primary evil of attempted homicide is that it may inflict death." See id., quoted in Gordon, 780 So.2d at 23. This Court therefore concluded in Gordon that the crimes were "not `degree variants' of the same underlying offense" for which dual convictions are unauthorized pursuant to section 775.021(4)(b)(2). 780 So.2d at 25.
Gordon's focus on a "primary evil" in applying section 775.021(4)(b)(2) was a departure from our precedent construing and applying the provision. In Sirmons v. State, 634 So.2d 153, 154 (Fla.1994), this Court had held that convictions of robbery with a weapon and grand theft of an automobile were impermissible under section 775.021(4)(b)(2) because the offenses were "merely degree variants of the core offense of theft." We relied on previous decisions in which we had found double jeopardy violations for dual convictions of other crimes which were also aggravated forms of theft. See id. at 153-54 (citing to Johnson v. State, 597 So.2d 798 (Fla.1992), and State v. Thompson, 607 So.2d 422 (Fla.1992)). Subsequently, in State v. Anderson, 695 So.2d 309, 311 (Fla.1997), we reaffirmed and extended Sirmons, holding that two offenses can be considered "degree variants" of the same core offense even when they are not degrees of the same offense within the same statutory chapter. See also Hayes v. State, 803 So.2d 695, 700 (Fla.2001) (stating that multiple convictions premised upon a single taking of the victim's property would be invalid under Sirmons).
The Court in Gordon adopted a narrow reading of Sirmons. The Court initially noted that in his Sirmons concurrence, Justice Kogan stated that theft, battery, possession of contraband, and homicide are the type of core offenses upon which other criminal charges are based. The Court in Gordon then stated:
Extended to its logical extreme, a broad reading of Sirmons and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora *951 of criminal offenses is undoubtedly derived from a limited number of "core" crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b). The courts' exceptions for homicides, ... and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception. However, extension of this exception to multiple convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury would contravene the plain meaning of section 775.021.
780 So.2d at 23.
Although I concurred in the per curiam opinion in Gordon, I now conclude that section 775.021(4)(b)(2) should not be applied so restrictively. Nothing in the language of the provision supports limiting this exception to any specific list of core offenses. Indeed, other courts have extended section 775.021(4)(b)(2) beyond the four core offenses identified by Justice Kogan. See, e.g., Jones v. State, 764 So.2d 659, 660 (Fla. 1st DCA 2000) ("Both offenses for which appellant was convicted share the same common core criminal conduct, resisting an officer."); Hardy v. State, 705 So.2d 979, 980 (Fla. 4th DCA 1998) (observing that because offenses of leaving the scene of an accident involving death and leaving the scene of an accident involving injury "are different degrees of the same crime, the legislature may have intended only a single conviction"); Beltran v. State, 700 So.2d 132, 135 (Fla. 4th DCA 1997) ("Sexual battery arose from the common law crime of rape and appears to be its own category of core offense.").
Further, the concern expressed in Gordon that the exception in subsection (4)(b)(2) must be limited so it will not swallow the rule in subsection (4)(b) is overstated. If convictions truly derive from different "core offenses" or "basic crimes," dual convictions are authorized. See, e.g., Austin v. State, 852 So.2d 898, 901 (Fla. 5th DCA) (holding that aggravated battery and resisting an officer with violence grow out of different core crimes), review dismissed, 860 So.2d 976 (Fla.2003); Hale v. State, 838 So.2d 1185, 1189 (Fla. 5th DCA) (approving dual convictions because trafficking in stolen property has as its core a theft offense and receiving money from a pawnbroker by false verification of ownership has as its core violation of the duty not to lie), review denied, 848 So.2d 1154 (Fla.2003). However, where the two convictions are for offenses that are merely aggravated forms of the same underlying offense, only a single conviction is proper under section 775.021(4)(b)(2). Both the rule and the exceptions can retain a reasonable field of operation without arbitrarily limiting core offenses to a narrow few.
Therefore, I conclude that Gordon's focus on whether convictions punish the same "primary evil," 780 So.2d at 23, rather than on whether they constitute "degree variants of the core offense," Sirmons, 634 So.2d at 154, was improper.[4] The "primary evil" analysis applied in Gordon in lieu of determining whether the crimes had the same core offense reinvigorated a *952 concept that should have been put to rest with the 1988 enactment of the amendment to section 775.021(4), the Legislature's response to Carawan. In using the term "primary evil" in Carawan, which was decided in 1987, Justice Shaw was responding to the majority's determination in that case that the statutory offenses of attempted manslaughter and aggravated battery "addressed essentially the same evil." 515 So.2d at 170. Justice Shaw was obviously not referring to the 1988 legislation abrogating Carawan contained in section 775.021(4)(b)(2), Florida Statutes. See generally State v. Smith, 547 So.2d 613, 617 (Fla.1989) (acknowledging that Carawan was overridden by in chapter 88-131, section 7, Laws of Florida).
The 1988 amendment to section 775.021(4) and its abrogation of Carawan shifted the focus away from whether two offenses address the same evil. Under the exception in subsection (4)(b)(2) to the legislative preference for a conviction for each offense committed in a criminal episode, the proper inquiry became whether multiple convictions for a single act derive from the "same offense" or, as stated in Sirmons, the same "core offense." The difference between "primary evil" and "core offense" is not merely semantic. In Gordon, the majority quoted Justice Shaw's statement in Carawan that the "the primary evil of attempted homicide is that it may inflict death," and said that the primary evil of attempted first-degree murder is that it "punishes the intent to kill." 780 So.2d at 23. In contrast, under Sirmons a determination of the core offense takes into account the criminal conduct as a whole, rather than either solely the potential harm (the possible infliction of death) or the defendant's intent (the intent to kill) in isolation. See, e.g., Anderson, 695 So.2d at 311 (concluding that dual convictions under different provisions punishing "the same basic crime (i.e., the violation of a legal obligation to tell the truth)" were invalid); Khan v. State, 704 So.2d 1129, 1131 (Fla. 4th DCA 1998) (holding that dual convictions for interfering with the custody of a child and removing a child from the state contrary to a court order were invalid because they "punish the same basic crime").
Therefore, I conclude that the Court's double jeopardy analysis in Gordon is contrary to Sirmons and Anderson, and therefore a misapplication of section 775.021(4)(b)(2). Rather than rely on Gordon, the Court should ascertain the true core offenses of the crimes in this case.
In an analysis pursuant to Sirmons, the core offense of aggravated battery is obviously battery, its core element. See State v. Reardon, 763 So.2d 418, 420 (Fla. 5th DCA 2000), review dismissed, 806 So.2d 446 (Fla.2002). Ascertaining the core offense of attempted second-degree murder is more difficult. A completed homicide is a core offense in itself. See Beltran, 700 So.2d at 135 ("As Justice Kogan noted in Sirmons, homicide is its own core offense."). However, in my view, homicide is not the core offense for attempted homicide.[5] This Court has consistently stated that degree variants are "aggravated forms" of the core or underlying offense. *953 See Gordon, 780 So.2d at 21; Sirmons, 634 So.2d at 154; Goodwin v. State, 634 So.2d 157, 157 (Fla.1994). Attempted second-degree murder is clearly not an aggravated form of the underlying offense of second-degree murder.[6] Accordingly, the core offense for attempted second-degree murder must lie outside the homicide statute.
I conclude that battery, in addition to being the core offense for aggravated battery, is also the core offense for attempted second-degree murder, regardless of whether the victim is struck or injured. As previously stated, a battery is an intentional, nonconsensual touching or striking. See § 784.03(1)(a), Fla. Stat. (2004). When the victim is struck or injured in the murder attempt, attempted first- or second-degree murder is a battery aggravated by the more culpable mental state of premeditation or a depraved mind regardless of human life. When there is no victim contact, attempted murder is an aggravated form of attempted battery.[7]
Consequently, attempted second-degree murder and aggravated battery are merely degree variants of the core offense of battery pursuant to section 775.021(4)(b)(2). This determination would preclude dual convictions for a single act constituting a murder attempt, and would bring attempted homicide into alignment with the rule, referred to in Gordon, 780 So.2d at 23, that a single homicide can yield only a single conviction. See, e.g., State v. Chapman, 625 So.2d 838, 839 (Fla.1993) (stating that "a single death cannot support convictions of both DUI manslaughter and vehicular homicide"); Houser v. State, 474 So.2d 1193 (Fla.1985) (stating that "only one homicide conviction and sentence may be imposed for a single death."); Campbell-Eley, 718 So.2d at 330 (concluding that defendant could not be convicted of both second-degree murder and aggravated battery on a pregnant woman for a single homicidal assault); Laines, 662 So.2d at 1249-50 (holding that sentences for both aggravated battery and second-degree murder could not be imposed for a single deadly attack). Allowing dual convictions only when the victim survives, premised solely on the fact that "an actual homicide did not occur," Gordon, 780 So.2d at 25, is illogical. Just as there is no "rational basis in the evidence" to support convictions of murder and aggravated battery for a single death, Campbell-Eley, 718 So.2d at 329, there is no rational basis to allow the aggravated battery conviction only in those cases in which the intended victim survives the murder attempt.
Finally, while not dispositive I find it noteworthy that the State agreed at sentencing that sentence could be withheld on the offense of aggravated battery on a law enforcement officer in count VI. Because the defendant is spending the rest of his life in prison for the crime of attempted second-degree murder with a firearm in count VII, the views in both the majority *954 and dissenting opinions concern the underlying principles rather than any actual consequence to this defendant. And while it is one thing for the State to charge variants of the same crime to make sure that the defendant receives the maximum sentence, it is quite another to allow multiple convictions for what is essentially the same crime.
Accordingly, I would recede from Gordon's holding that dual convictions of attempted first-degree murder and aggravated battery causing great bodily harm are permitted under section 775.021(4)(b)(2) for firing a single shot that strikes a victim but does not result in death. In this case, I would hold that the conviction of aggravated battery on a law enforcement officer in count VI, on which sentence was withheld, must be vacated pursuant to a correct application of section 775.021(4)(b)(2) to the offenses here. I therefore dissent from the Court's decision in this case.
ANSTEAD, J., concurs.
QUINCE, J., dissenting.
I cannot agree that a defendant can be convicted of both attempted second-degree murder with a firearm and aggravated battery on a law enforcement officer for a single act of shooting at a police officer; therefore, I dissent. Under the facts and circumstances of this case, the aggravated battery is the same core offense as the attempted second-degree murder. See Sirmons v. State, 634 So.2d 153 (Fla.1994). As Chief Justice Pariente points out in her dissent, the defendant was charged with two forms of attempted first-degree murder: attempted first-degree murder of a law enforcement officer and attempted first-degree murder on the same victim and both from the same act of shooting at the victim. If the jury had returned guilty verdicts for each of these offenses, he could only have been convicted and sentenced on one of the offenses. The fact that the jury chose to convict on lesser included offenses should not change the result.
PARIENTE, C.J., and ANSTEAD, J., concur.
NOTES
[1] See U.S. Const. amend. V; art. I, § 9, Fla. Const.
[2] Subsections (b)(1)-(3) have been described as setting forth "exceptions to the Blockburger same-elements test," Gaber, 684 So.2d at 192, because even if the offenses are separate under that test, dual convictions are barred if the offenses meet the criteria in one of the exceptions.
[3] The Fifth District also relied on its decision in McKowen v. State, 792 So.2d 1251 (Fla. 5th DCA 2001), in which it held that there is no double jeopardy bar to convictions of battery on a law enforcement officer and attempted second-degree murder for a knife attack on the officer. The Fifth District employed only the "same elements" test in reaching this conclusion in McKowen. See Id. at 1252.
[4] In Gordon, the defendant was convicted as charged of both attempted first-degree murder and aggravated battery. See 780 So.2d at 18. The defendant in this case was convicted of attempted second-degree murder and aggravated battery as lesser included offenses on counts whose only difference, both as to the charged crimes and the lesser included offenses, was the element of the law enforcement officer victim in count VI. This distinction from Gordon leads me to see this issue in a new light.
[5] District courts have held to the contrary in determining that convictions of both attempted premeditated (first-degree) or depraved mind (second-degree) murder and attempted felony murder for a single killing violate double jeopardy. See Tucker v. State, 857 So.2d 978 (Fla. 4th DCA 2003); Mitchell v. State, 830 So.2d 944 (Fla. 5th DCA 2002). I would reach the same result, but because the core offense of both crimes is battery rather than homicide. Attempted felony murder, as codified in section 782.051(1), Florida Statutes (2004), requires "an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another."
[6] In general, convictions of both attempt and the completed crime are precluded not because of a double jeopardy bar but because failure (attempt) and success (the completed crime) are factually exclusive of one another. See § 777.04(1), Fla. Stat. (2004) (providing that person who attempts to commit offense "but fails in the perpetration or is intercepted or prevented in the execution thereof" is guilty of criminal attempt).
[7] To the extent that assault can be viewed as a core or precursor offense to an attempted murder in which there is no allegation of victim contact, it is only in its common law sense of attempted battery. See Antonacci v. State, 504 So.2d 521, 522 n. 1 (Fla. 5th DCA 1987) (stating that at common law, what is now assault was punished as attempted battery); Savino v. State, 447 So.2d 411, 413 (Fla. 5th DCA 1984) (Cowart, J., concurring specially) (same).